## AT NISI PRIUS, AT GREENSBURGH,

### MAY · ASSIZES, 1795.

CORAM, M'KEAN CHIEF JUSTICE, AND YEATES.

## Lessee of Mary Plumsted and Archibald M'Call, *against* John Rudebagh.

Application for a rule to stay proceedings must be made in bank.

Improvements in the lands within the Indian purchase, shall not be given in evidence to defeat a legal title, unless the party has applied for an office right within a reasonable time.

The mere declaration of an agent or his acts as such, shall not be given in evidence to prove his agency.

EJECTMENT for 301¾ acres of land in Huntingdon township.

Mr. J. Ross for the defendant, moved that the proceedings should be staid in this action, until the costs of a former suit brought by the lessee of Bernard Gratz against the now defendant, to July term 1783, should be paid, a *non pros.* having been entered therein December 1791. He suggested, that both plaintiffs claimed the premises in question, under the same title.

Messrs. J. Woods and Young for the plaintiff, asserted the titles to be different and for other lands, and that they had not any connection whatever.

And *per cur.* This application, if well founded, should have been made in bank. We cannot receive it here, unless by mutual consent. But if the motion had been made in bank, how would it appear that the titles were the same? The suits are be*tween different parties, and one of them is out of court. (Vid. 2 Bl. Rep. 1158. Hullo. [*503 Costs, 45.)

Motion denied.

The plaintiff claimed under a special order of survey No. 29, entered by David Franks in the land office on the 1st April 1769, for 500 acres of land, up Sewickley, Old-town creek, on the east side of Yohiogeny, adjoining to a tract to be surveyed to him on the mouth of the said creek, including the improvements thereon; a survey of 301¾ acres made on the 1st June 1769, a conveyance by Franks to William Plumsted in 1770, a warrant of acceptance in favour of the lessors of the plaintiff, his executors, dated 17th February 1787, and a patent to them, in trust for the devisees of William Plumsted, in consideration of 51l. 6s. 6d. dated 21st February 1787.

The defendant insisted, that his father Christopher Rudebagh settled on these lands in 1761, before the Indian purchase,

[Plumsted's Lessee *v.* Rudebagh.]

in consequence of a military permit from colonel Boquet, which he alleged, was lost by the casualty of fire—but his uninterrupted possession until his death was contended to be presumptive evidence thereof; and that he made considerable improvements thereon, which he offered to shew in evidence. The defendant and his brother Adam, on the 27th December 1784, took out a warrant for 300 acres, including an improvement on big Sewickley creek, on both sides thereof.

This parol evidence was excepted to by the plaintiff under the act of assembly of 3d February 1768, and the governor's proclamation of the 24th of the same month. Settlers on the communication gained no right. They were merely sheltered from indictments and actions of trespass. The late proprietaries were fully at liberty to grant such lands to whom they pleased, if the settlers did not apply when their office opened, or shortly after. Consequently the bare improvements and possession of the defendant or his ancestors could give no title. No warrant was applied for by the defendant until 1784. As to the first settlement and military permit, he asserted, that the defendant's father entered originally upon and held the lands under Plumsted and Franks, who were the agents of the contractors for the British army, and had a post established there for the convenience of their commissary, all which could be proved by a witness in court, if it was deemed material. If any written permission was ever obtained, it must have been to those agents. And if there ever was one to Christopher Rudebagh, and it was burnt or *lost, some one witness might be produced to prove that it once had existed.

To this the defendant answered, that the first link of the plaintiff's chain of title was bad, as it called for Franks' improvements, which were in fact made by the father of the defendant. It recited an untruth, and was therefore merely void in itself, by reason of the misrepresentation. If the order of survey was void, every link of the chain necessarily dependent on it, must share the same fate; and it is of no consequence when the defendant obtained his warrant, under such circumstances. The possession of the Rudebagh family operated more strongly than a caveat. It was notice to all the world that they claimed title to the lands. As fraud could only be proved *in pais*, it was hoped the parol evidence would go to the jury for their consideration.

*Per curiam.* The defendant rests on this, that Mr. Franks has been guilty of a false suggestion. But there is no assertion in the location, that the improvement was made by him, and therefore the ground-work of the objection fails. Yet suppose it to be otherwise, and still more, that the military permit issued in favour of Christopher Rudebagh, (which is highly improbable, under the statements of both parties,)

[Plumsted's Lessee *v.* Rudebagh.]

how can the parol evidence affect the present question of right? In 1761, the soil belonged to the aborigines. Neither the act of assembly, nor the proclamation of 1768, gave the settlers before the Indian purchase, any title to the lands. By the act it was made highly penal, either to make other settlements on the Indian lands, or not to remove from those already made.

On the opening of the land office on 3d April 1769, it was declared, that "those who had settled plantations, especially "those who had settled by permission of the commanding of-"ficers to the westward, should have a preference." What does this preference mean? Does it not suppose, that an application should be made by such settlers to the land office on 3d April 1769, or in a reasonable time afterwards, for this favour, in order to secure their possessions? Neither old Rudebagh nor his sons applied for any supposed preference of these lands, until the month of December 1784, above fifteen years after the commencement of the plaintiff's title, and this will not be pretended to be in due and convenient time. To introduce witnesses to prove these improvements, would in our idea, be irrelevant to the point of right, after such great negligence. Such a measure would make the titles of lands, which should be per\*manent and fixed, to depend on parol evidence, and open a wide door to perjury. The [\*505 testimony therefore, must be overruled.

The defendant then offered to prove from the declarations of one Christopher Hayes, that he was the agent of Plumsted and Franks, acted as such at fort Pitt, and among other things put Alexander Somerville into possession, against whom an ejectment was afterwards brought by the now defendant for these lands, and judgment obtained by default, in January 1780.

But the court ruled, that neither the declarations of Hayes, nor his acts, could of themselves be given in evidence to prove his agency.

And per Yeates, this very point was very fully argued, and determined in bank in the same manner, in Meredith's lessee *v.* Mauss, January term 1793.

Verdict for the plaintiff, with six pence damages and six pence costs.