AARON H. CRONKITE and CHARLES CRONKITE v. HENRY
WELLS, President of American Express Company.

The delivery of a package of money to be transported by the American Ex-
press Company to the city of New York, to the clerk of the agent of said
company, outside the office of such agent, is not such a delivery to said com-
pany as to make them liable for a loss thereof, occurring while it was in the
hands of such clerk, and before it came into the actual possession of the
agent.

The fact that the former agents of said company were accustomed to receive
such packages from the plaintiffs outside of their office, &c., will make no
difference.

The fact that such clerk was accustomed to receive such packages in the office
of the agent, and receipt the same there, will make no difference.

APPEAL from judgment of Supreme Court. The action
was against the American Express Company, as common
carriers, to recover the value of a package of money ($858)
alleged to have been lost by the company.

The cause was tried at the Erie Circuit in October, 1859.
The principal facts were admitted, or in respect to which there
was no conflict of evidence. They were these in substance:
The plaintiffs were in the banking and exchange business at
Menah, in the State of Wisconsin, under the firm name of
the Winnebago County Bank, during the year 1856. The
defendant was, during that year, a common carrier of money
packages for hire, between Menasha, in Wisconsin, and the
city of New York; and had an established office for the
receipt of money packages and freight to be transported by
it, at Menasha. Charles Scheffer was the sole agent of the
defendant for the receipt of such packages and freight for
transportation, at Menasha, from December, 1855, up to
October, 1856. John Potter, Jr., became such sole agent
immediately after Scheffer, in October, 1856, and continued
such sole agent through October and November, 1856; and
while such, the office of the defendant was at his law office
in Menasha, and was usually closed at 9 o'clock in the
evening. Scheffer, while agent, was accustomed frequently
to receive and receipt money packages for transportation by

the defendant outside of the office of the defendant at Menasha, at the post-office and other places in Menasha, and wherever he might be when called on with a package. He had frequently so receipted packages to the plaintiffs. The plaintiffs had frequently delivered money packages for transportation to the messengers of the defendant, on the cars and elsewhere, outside of any office of defendant, and took receipts for such packages, and such packages were carried through safely by the defendant to their respective destinations. Once, in the fall of 1856 (and after the package for which this suit was brought was lost), one of the plaintiffs, by the direction of Mr. Peckham, the general agent of the defendant at Milwaukie, delivered a money package to be carried east to a messenger of the defendant at Menah, in Wisconsin, where the plaintiffs did business, and outside of any office of the defendant. One Lucius T. Fisher was employed by Scheffer, while he was agent, to assist him in the business of his agency. While so employed, Fisher, at four different times, received at Menasha packages of money from the plaintiffs for transportation by defendant, and gave receipts therefor, and signed them " Charles Scheffer, agent, per Fisher." These packages were safely delivered at their respective places of destination.

While Potter was agent of the defendant at Menasha, he employed Fisher to attend to the business of the express company for him. The company at Menasha, while he was agent, did not have so much business as to require the services of Fisher, or any other person than Potter, but as Potter did not understand the business, it being new business to him, and Fisher being familiar with it, he employed Fisher to do the business of the company for him, and in his stead. Fisher was employed in the office of the company at Menasha by Potter to aid him in doing and transacting its express business, in November, 1856, and on the 5th November, 1856.

On the morning of the 5th November, 1856, the plaintiffs delivered to the defendant, at its office in Menasha, a package of $1,164 in money, for transportation by the defendant to the city of New York. Potter and Fisher were both in the

office at the time. The plaintiff's agent who delivered the package, first presented it to Potter, who told him to give it to Fisher, and let Fisher receipt it; and, accordingly, Fisher, in the presence of Potter, filled up and delivered a receipt for the package, signing it, "John Potter, Jr., agent, per L. S. Fisher." This package was safely carried and delivered at its place of destination by the defendant. Fisher, when in the employ of both Scheffer and Potter, was frequently left by them in charge of the office at Menasha, during their absence; by Scheffer, for an hour at a time, and by Potter, often for a whole day at a time.

On the 1st August, 1856, the plaintiffs and defendant entered into a contract, in writing, for the carriage of money packages for the term of one year. In consideration of the sum of $235.50, to be paid quarterly by the plaintiffs, the company agreed to transport and deliver to the order of the plaintiffs " all packages of circulating notes which the plaintiffs, in·due course of their exchanges and redemptions, might send to or receive from their corresponding agent, bank or broker, on the routes or lines of said American Express Company, as follows: $150,000 to and from Fond du Lac, Wis., to and east of Buffalo, and $50,000 to and from Fond du Lac, west of Buffalo, and intermediate places wherever said American Express Company now have established agencies. The total annual amount of the packages of bank notes not to exceed the sums specified to and from the points specified severally; and in case the amount forwarded and received should exceed the sum mentioned, the transportation of all such excess to be paid for at the rates to and east of Buffalo, of $1.32 per $1,000; and west of Buffalo, seventy-five cents per $1,000. This contract contained the following provision: "And it is hereby expressly understood and agreed by and between the parties hereto, that all packages of bank notes delivered to be forwarded, shall be properly secured in strong paper, sealed with the seal of said bank (the plaintiffs) plainly addressed, and the true amount therein contained distinctly marked on the package; also, that the said American Express Company are

not to be held responsible for the loss of any package of money received and carried under this contract, unless the same has been properly delivered at one of the established offices of the company, and regularly receipted. by their authorized agent."

The transportation of money packages from Menasha for the plaintiffs by the defendant, was paid for according to the rates of this contract.  Menasha was forty miles farther west than Fond du Lac, and Fond du Lac was on the direct route east from Menasha, on the road to New York city.

One Crane was a clerk of the plaintiffs, and attended to the delivery of money packages for them to the defendant at Menasha, for transportation, from time to time during 1856. On the 5th November, 1856, he had a package of $858 in bank notes belonging to the plaintiffs to be delivered, to be carried by the defendant to the city of New York.  The package was done up securely, and addressed to George Ellis, Esq., New York city, on the outside, and marked with the contents.  He went to the office of the defendant at Menasha with the package about dusk, on the 5th November, and found the office shut.  He then went to Potter's (the agent) house and inquired for him, and was told that he had gone to a railroad meeting.  He went to the railroad meeting, but did not find Potter there.  He then went a short distance further up the street, and found Fisher, and told him he had a package to send to New York, and inquired whether he could receipt it.  Fisher said "yes."  He spoke of the office being closed (this was about 7 o'clock in the evening), and Fisher said he could as well receipt the package there.  They went into an eating saloon, and Fisher got pen and ink and filled up a receipt, signing it "John Potter, Jr., agent, per L. S. Fisher," and gave it to Crane.  Fisher put the package into his inside breast pocket, and left the saloon.  He stopped at the railroad meeting, where he expected to find the agent, Potter.  Did not find him there, nor elsewhere, and about half past 8 o'clock went to his boarding house, taking the package with him.  He went to bed a little after nine o'clock, having the package in his coat pocket.  On getting up the

next morning, about 7 o'clock, the package was missing. It had been stolen. It was to recover for the loss of this package of $858 that the action was brought.

Upon the plaintiffs resting, the defendant's counsel moved for a nonsuit on the ground that the plaintiffs had not shown that the package lost was delivered to the defendant; also, because the package was not delivered at the office of the company.

The plaintiffs were nonsuited by the court, to which decision the plaintiffs' counsel excepted. The court ordered the exceptions to be heard in the first instance at General Term.

The General Term sustained the nonsuit, and ordered judgment for the defendant for costs. From this judgment the plaintiffs appeal to this court.

*Henry W. Rogers*, for the respondents.

The plaintiffs were properly nonsuited, because Fisher, who received the package in question, was not the agent of the defendant, but simply a clerk of defendant's servant. Potter had no power to make Fisher the servant or agent of defendant. (Story's Agency, §§ 13, 14; 3 Meriv., 237; Chitty on Com. and Manuf., 30, 206.) An agent cannot delegate any portion of his power requiring the exercise of his discretion and judgment. (*Com. Bank* v. *Norton*, 1 Hill, 507; see also Parsons' Mercantile Law, 155, note 7, and cases cited.)

To make an unauthorized act of the agent binding on his principal, he must have ratified it with a full knowledge of the facts affecting his rights. (*Owings* v. *Hull*, 9 Peters, 607; *Seymour* v. *Wyckoff*, 6 Seld., 213; *Norton* v. *Palmer*, 4 Seld., 398; *Davenport* v. *Buckland*, H. & Denio Sup., 75.)

The plaintiffs were not warranted in supposing that Fisher was authorized to receive money packages, much less that he was authorized to receive them outside of the company's office, at unseasonable hours, and at unreasonable places. (Parsons' Maritime Law, 155; *Salmon Falls Co.* v. *Bank Tangier*, 21 Law Rep., 6; *Goddard* v. *Same*, 21 Law Rep., 12.)

It is not shown, nor attempted to be, that the express com-

pany ever had any notice or knowledge even of the existence of Mr. Fisher.

If, therefore, Potter could not delegate his authority to him, the express company cannot be said to have directly or indirectly clothed him with even apparent authority; or, in other words, to have placed him in a position where he might deceive others by claims to power, which in fact, he did not possess.

But aside from all other questions, the plaintiffs knew, as we have seen, that Fisher was not the agent, but a clerk of the agent; and though Scheffer, when agent, might have received money packages outside of the office, the plaintiffs were not thereby warranted in believing that Mr. Fisher, the clerk of Mr. Potter, the agent, might do the same.

WRIGHT, J. The package of money was stolen while in the custody of a person named Fisher, at his lodgings in Menasha. The evening before the theft, the plaintiffs' clerk went to the defendant's office to deliver it to be carried to New York, but found the office closed. He made search elsewhere for the agent of the defendants, but not finding him, met Fisher in the street, and upon Fisher answering that he could receipt it, they went into an eating saloon where a receipt was executed, and the package given into the custody of Fisher. Fisher took it to his boarding house, and in the morning it was found that it had been abstracted from his coat pocket. There was no pretense that it ever reached the office of the company at Menasha, or came into the hands of its agent at that place, or any other agent, unless Fisher is to be deemed one.

The action proceeded upon the theory that there had been a delivery of the package to the defendants in their capacity of common carriers, and that, as such carriers, the risk had commenced, and they were consequently liable for the loss. As there must be an actual delivery to the carrier, or to some person authorized to act in his behalf, before his responsibility as such commences, of course it was incumbent upon the plaintiffs to show a delivery of the package to the defendants,

or to some one authorized to receive it on their behalf, before they could be charged with the loss. This the court below deemed that the plaintiffs failed to show, and nonsuited them. The question is, was this error? I think it was not.

The defendants were an association engaged in the business of carrying packages of freight and money on lines or routes established by themselves. They had established an office at Menasha for the receipt of packages to be carried, and appointed an agent to take the sole charge of their business and affairs at that place. A delivery of a package at this office, even to a person placed temporarily in charge thereof by such agent, would have been a good delivery to the defendants; and so, perhaps, a delivery to their agent at any place in Menasha, outside of such office. Had the agent received and receipted, in the name of his principals, the package of money at the banking house of the plaintiffs, it would have been deemed a complete delivery to the defendants, to charge them as carriers, with the custody of it. But in this case there was neither a delivery at the office, nor to any agent of the company elsewhere. The office being closed and not finding the agent, the package was given to Fisher in an eating saloon. Fisher was not the agent or servant of the company, nor did he profess to be. He had been temporarily employed by Potter, the agent, as his clerk; and the plaintiffs knew that he was not the defendant's agent, but a clerk of such agent. The receipt which he gave for the package notified them of the fact; and they also had notice of it on delivering another package of money at the office for transportation the same day. In both instances the receipts were signed by Fisher, as Potter's clerk. Potter had no power to make Fisher, in any sense, the agent of the defendants; nor did he attempt it. He could not appoint a sub-agent without express authority from his principal, or the nature of the business required it. This was not such a case, and it affirmatively appeared that no sub-agent was needed. Nor was it shown, or attempted to be shown, that the express company ever had any notice or knowledge even of the existence of Fisher, much less that they knew or recognized him

as acting as their servant or agent. But the plaintiffs knew that the company had an office at Menasha where their business was transacted; that such business was under the exclusive control of Potter; and that Potter, and not Fisher, was the person authorized to receive and receipt packages for transportation. Under these circumstances, the delivery of the package in question to Fisher outside of the company's office, was not a delivery to the company, so that its liability as a carrier attached. The substance of the transaction was to make Fisher the plaintiff's agent to deliver the package at the established office of the company, or to Potter, who was authorized to receive it on its account.

Without regard, therefore, to the contract between the parties for the carriage of money packages, which was in force at the time, and considering it to have no application to the particular case, I am of the opinion that the nonsuit was properly granted, and that the judgment of the Supreme Court ought to be affirmed.

Judgment affirmed.