JOSEPH STRINGHAM, APPELLANT, *v.* THE ST. NICHOLAS INSURANCE COMPANY, RESPONDENTS.

*Agency of Insurance Companies—What Evidence of?*

Evidence that a party assuming to act as the agent of an Insurance Company, was authorized by the company to purchase, at their expense, a policy register in which to keep an account of his business for the company, is not sufficient to establish the general agency of such party.

*W. Dorsheimer* for Appellant.
*J. C. Dimmick* for Respondents.

DAVIES, Ch.J.—This is an action upon a policy of insurance, issued by the Defendants to one L. Austin Spaulding, on the 12th day of July, 1856, in the sum of $3,000, upon a stone flouring mill and machinery therein. On the 30th of June, 1857, upon payment by Spaulding, the policy was renewed for one year from July 12, 1857, to July 12, 1858. On the 25th of August, 1857, Spaulding assigned the policy and all his interest therein to U. H. Wolfe, and on the 5th day of October, 1857, Wolfe assigned the policy and all his interest therein to the Plaintiff. The property covered by the policy was totally consumed by fire on the 15th of November, 1857. The policy contained this clause : " The interest of the assured in this policy is not assignable, unless by consent of this corporation, manifested in writing; and in case of any transfer or termination of the interest of the insured, either by sale or otherwise, without such consent, this policy shall from thenceforth be void and of no effect."

Upon the back of said policy were printed two blank consents, as follows: " The St. Nicholas Insurance Company of the City of New York hereby consent that the interest of ———— in the within policy be assigned to ————, subject nevertheless to the conditions therein contained. ————, Secretary."

The said consents were filled up and signed previous to the execution of said assignments, respectively, on the 25th of August and 5th of October, 1857, so as to read as follows: " The St. Nicholas Insurance Company of the City of New York hereby

consent that the interest of L. A. Spaulding in the within policy be assigned to U. H. Wolfe, subject nevertheless to the conditions therein contained.                 H. A. BREWSTER, Agent."

The second consent was in all respects similar, except that the name of U. H. Wolfe appeared in place of L. A. Spaulding, and that of Joseph Stringham in place of U. H. Wolfe. The word " Secretary," in each of said consents, was erased, and the word " Agent " written in its place. The defence was, that as the company had never given its consent that the policy might be assigned to Wolfe, and by Wolfe to the Plaintiff, and the same having been assigned without such consent, the policy had become void and of no effect. The referee who tried the action determined that the company had never given its consent to such assignments; that the consents given by Brewster, as agent, were unauthorized, and not binding on the company ; and thereupon dismissed the complaint and gave judgment for the Defendants, which, on appeal, was affirmed at the General Term. The Plaintiff now appeals to this Court. The only question seriously controverted upon the trial was whether Brewster had authority to assent, on behalf of the company, to the assignments by Spaulding and Wolfe.

The Plaintiff sought to establish such authority upon the grounds :

1. That Brewster had, on the 5th of September, 1857, notified the Defendants that Spaulding's interest in the policy had been assigned to Wolfe, and that the company had by silence ratified the same.

2. That Brewster, as agent of the Defendants, had authority to grant the assent of the company to those assignments.

The first position was sought to be established by the testimony of Brewster. It had appeared on the trial that the secretary of the Defendants, under date of December 4, 1857, wrote to Brewster, informing him that the Plaintiff claimed for a loss under Policy No. 13,495, and renewal thereof, issued to L. A. Spaulding, on flouring mill at Lockport, and stating, " As we have no evidence on our books of there having been any change of interest,

except to L. Austin Spaulding, we enclose a copy policy as recorded on our books. If there has been any further change, please write it out in full, as it is in the original, and return it to us at your earliest convenience." On or about the 26th of December, 1857, Brewster returned the copy policy, with an entry in red ink written in it after "other insurance permitted without notice until required," as follows: "I find a memorandum on one record, 'August 22, 1857, assigned to U. H. Wolfe,' 'October 3, 1857, assigned to J. Stringham, in trust.'" The copy policy with this memorandum therein was enclosed in a letter as follows:

"*Rochester*, *Dec.* 26, 1857.

"W. S. SLOCUM, Esq.

"DEAR SIR:—Enclosed I return you the policy you sent me, with entries on it made on my books, and as I supposed reported to you by my clerks.                H. A. BREWSTER."

Slocum, the secretary of the Defendants, testified: "All the responsible correspondence of the company was conducted by me, and passed under my scrutiny. Before the fire which destroyed the Spaulding mill, I had no knowledge that Brewster had signed a consent to the assignment of this or any other policy ; no notice before that had ever come to me, or to the office, that I know of, that he had signed or given any such consent. Consents to assign policies, when given by the company, were signed by me as secretary."

Brewster testified that on the 1st of January, 1858, he transmitted to the Defendants a copy of an account which was marked No. 2, which contained a memorandum at the foot thereof in these words:

"*Rochester*, *Sept.* 5, 1857.—Aug. 27. No. 13,495, assigned by L. A. Spaulding to U. H. Wolfe.

"True copy.                H. A. BREWSTER."

The witness Slocum testified that in January or February, 1858, he was at Rochester, when the witness Brewster cut a leaf from his letter book and gave it to him. It was an impression taken by letter-press, and was in these words:

"H. A. BREWSTER;

   In account with the ST. NICHOLAS FIRE INS. Co.

                 Dr.

1857. Aug. 6, for prem. of Chas. W. Thompson,

     No. 17,385.....................$15.00

Cr.—By 10 per cent. commission on $15.00.....  1.50

  Balance in hand of E. Pond, Assignee..  13.50

                $15.00–$15.00

Sept. 6. To balance of acct. as above..............$13.50.

  E. E.

"*Rochester, Sept.* 5, 1857."

" August 27. No. 13,495, assigned by L. A. Spaulding to U. H. Wolfe.       " H. A. BREWSTER, Agent."

A letter dated Sept. 5, 1857, by H. A. Brewster to the Defendants, was produced by the Defendants, on the Plaintiff's call, and marked No. 3, and the account enclosed was also produced and marked by the referee No. 4, and which account, marked No. 4, was in the words and figures following :

"H. A. BREWSTER,

   In account with the ST. NICHOLAS FIRE INS. Co.

                 Dr.

1857. Aug. 6, for prem. of C. W. Thompson,

    17,385.... ....................$15.00

Cr.—By 10 per cent. commission............  1.50

  By draft $13.35, and exchange to bal.....  13.50

             $15.00 – $15.00

  E. E.

"*Rochester, Sept.* 5, 1857."

Slocum further testified: " I opened the letter No. 3, which had enclosed in it the paper No. 4, and nothing else. No. 4 was then just as it is now. It had nothing more upon it. We never received, to my knowledge or information, any paper from which this letter-press copy is an impression, nor any notice before the loss of the assignment, or of Brewster's consent."

The witness Brewster then testified that the leaf produced by

22

the witness Slocum was the one he (Brewster) cut from his letter-book; that it was an impression taken in his letter-book from No. 4, by his letter-press. Both were in the handwriting of his clerk, Davis. That the words in the letter-press copy, "August 27. No. 13,495, assigned by L. A. Spaulding to U. H. Wolfe," must have been cut off from No. 4, since it was enclosed to Defendants.

It is stated in the case that, " on comparison by counsel of the respective parties, and the referee, it was evident beyond dispute, that the said letter-press copy was not an impression from No. 4; the lines were not of the same length; the same words which were written upon and composed one line in the one, were written on, and made two lines in the other. The same word was written out in full in the one, and abbreviated in the other. In the letter-press copy the lines under the figures were in red ink, and upon No. 4 in black ink. The blank paper at the bottom of No. 4, below the writing, more than covered the whole of the impression on the letter-press copy." It might have been added that the words, " Balance in hand of E. Pond, assignee," appear in the letter-press copy, and are not in No. 4, but in lieu thereof the words, " By draft 13.35, and exchange to bal.; " and that in the letter-press copy appear these words: " Sept. 6. To balance of acct. as above," and which do not appear at all in paper No. 4. It is too clear to need further illustration, that Brewster was greatly in error in testifying that the leaf produced was a letter-press copy of paper No. 4, and that the latter had been mutilated, as well for the purpose of concealing the fact that the Defendants had notice of the assignment of Spaulding to Wolfe, as to convict them of a great fraud in manufacturing testimony. This bungling attempt to fasten notice of the assignment of Spaulding to Wolfe upon the Defendants, was a signal failure, and justly casts great discredit upon the other testimony of Brewster. It is not now urged that the Defendants had any notice of these assignments prior to the destruction of the property covered by the policy, and therefore all pretence of ratification or assent thereto by the Defendants is abandoned.

It is now contended, however, that Brewster, as agent of the

Defendants, had authority to grant the assent of the company to these assignments. It is very apparent from the testimony and the correspondence between Brewster and the company what his powers were.

1. He had authority to receive applications for insurance, and make them binding upon the company for the period of ten days. At the expiration of that time, if the company did not assume the risk, it terminated.

2. He had power to receive the premiums on renewals of policies and transmit the same to the company, and if accepted by them, on the receipt by him of the renewed certificate, signed by the officers of the company, to deliver the same to the assured.

His duties seem to have been confined almost exclusively, if not entirely, to these two matters. I do not attach any importance to the statement made by Brewster, that his impression is that he executed other permissions to assign policies; he says, "It is an impression; I cannot state positively if such were executed, and I cannot say that they were "—for the reason already suggested, and for the additional one, that the statement is very vague and indefinite. If he had been in the practice of granting such consents, he could easily have ascertained the fact and mentioned the instances. The isolated case referred to in Defendants' letter of February 13, 1856, wherein they state, "We have also noted the assignment of 8705, as requested," is too indefinite and uncertain to show that the agent had a general authority to give similar consents in other cases.

But the language of the policy, and the blank consent printed on the back thereof, unmistakably indicate the steps to be taken by a policy holder, when a consent to an assignment was desired, and the officer or agent only authorized to give the consent to assignments. As already observed, the policy carried on its face notice to all holders, that the interest of the assured was not assignable, unless by consent of the corporation manifested in writing, and the printed blanks on the back of the policy were like notice of the form of such consent, and the officer alone authorized to give it, and manifest the assent of the company.

It was full notice to all that it must be done by its secretary, and the erasure by Brewster of the word "Secretary," and writing in place thereof the word "Agent," was an admonition to the parties that the authority to give the consent was in the secretary only. It is doubtless true that the person applying to Brewster for these consents may have supposed that he had authority to grant them, or if not, that his acts would be ratified by the Defendants. But Brewster could not create an authority in himself to do the particular act, by its performance, or asserting his authority to do it. To bind his principal, his character as agent must be established and of so general a nature as to give him authority to do the act in question, or subsequent ratification, with full knowledge, must be established. The proof in this case falls far short of making out either of these positions. It was sought to bring home to the Defendants knowledge of these assignments, by showing that Brewster had entered in books kept by him at Rochester the fact that he had given the consent to these assignments. To make the contents of these books knowledge to the Defendants, it was proven that the Defendants, on the application of Brewster, had paid for one of them a small sum, and that said book was kept in the office of said Brewster, and was lettered on the back, "St. Nicholas Insurance Company, Policy Register, Rochester Agency, 1855."

The person who procured said consents testified, that on both occasions of procuring the same, "I saw said Policy Register, and that Brewster entered in said Policy Register the fact of such permission and assignment, and its date," and that said person saw on these occasions each of said entries made. There was no evidence offered that the Defendants or any of their officers ever saw said book, or had any knowledge of its contents; and it affirmatively appeared that all the knowledge they or any of them had in relation to said book, was derived from a letter written by said Brewster to the secretary of the Defendants, under date of "Rochester, August 6, 1855," in which he says: "We find it to be very necessary, as we advance in our business for you, that we should have a Policy Register for our own use. The companies

we represent have generally preferred the purchase of a book here, and we charge it to them, though some prefer to send us books. Those we have cost us $3.50, and are expressly got up for us of a uniform kind.   Can we order one for you ? "   To this letter the secretary of the Defendants replied, under date of August 9, 1855 : " Yours of the 6th instant is received.   You are at liberty to purchase the necessary books on behalf of this company for the transaction of its business in your city."

The counsel for the Plaintiff then turned to page 40 of said book, where the policy in suit is registered, and pointed out therein, against the description of the subject of insurance, the following entries in red ink :

" Assigned August 27, 1857, to U. H. Wolfe.

"       October 8, 1857, to Joseph Stringham, Buffalo." Defendants' counsel objected to the reading of either of said entries in evidence from said book, and the referee sustained the objection, and excluded the evidence, and the Plaintiff's counsel then and there duly excepted to such decision.   It certainly cannot be successfully maintained, that the circumstance that the Defendants paid or consented to pay for the cost of this register for Brewster's own use, changed in any aspect relations then existing between Brewster and the Defendants.   It is not suggested that the Defendants, or any of their officers, ever saw the said register, or were at any time made acquainted with its contents, or the lettering upon it, or the particular purposes to which it was applied.   It did not constitute Brewster the clerk of the Defendants, or bind them by the entries he or his clerks made therein.   Those entries were irrelevant to prove the fact that Brewster was the agent of the Defendants to give their consents. That must be established by evidence *aliunde* his acts or declarations.

Neither the declarations of a man, nor his acts, can be given in evidence to prove that he is the agent of another, or the extent of his powers (Scott *v.* Crane, 1 Conn. Rep. 255 ; Plumsted's Lessees *v.* Rudebagh, 1 Yeates, 502, 505 ; Lessee of James *v.* Stookey, 1 Wash. C. C. Rep. 330).

Brewster testified that his agency for the Defendants commenced upon the receipt of the letter from the secretary of the Defendants of April 13, 1855, and he produced the letter, and it was read in evidence. There was no proof that any other or greater powers were ever conferred upon him. It was in reply to a letter from Brewster, in which he says, " I should be glad to send your company risks, and can send you a good line at good rates." The Defendants' secretary said : " Your views with regard to a local agent to attend to the interest of our company in your city are correct. Should you feel disposed to send us applications of character mentioned in your letter, we will be happy to respond to them. As our directors do not allow agents to issue policies or make policies binding for terms of over ten days, as you can see by the enclosed receipts, we should restrict you also. . . . We have not had any printed applications of our own, but intend to get some printed soon. Should you send any applications, you can for the present use such as you have on hand, substituting our name, &c. If desired, we will forward you some of our certificates to bind risks temporarily."

The certificates so forwarded were in this form : " St. Nicholas Insurance Company, No. 23, office corner of 8th Avenue and 14th St., New York. This certifies that I, H. A. Brewster, agent for the city of Rochester, have received of —— dollars, being — months premium on $ — Insurance as per application No. —, dated the — day of —, 18 —, to be forwarded to their office as above for their action. It being understood and agreed between the parties that the said St. Nicholas Insurance Co. are not liable for this certificate beyond ten days from the date of the application referred to, unless the risk is accepted and a policy made and delivered for the whole term of — months, and in case the risk is not accepted the premium is to be returned.

    (Signed)                WM. WINSLOW, *President,*

                           WM. S. SLOCUM, *Secretary.*

" Dated this — day of —, 185 —.

                                     Agent."

Brewster testified that he received these certificates as early as

when he commenced business for the Defendants, as aforesaid, and exhibited them freely and generally to customers and persons who transacted business with the company at said office, No. 1 Arcade Buildings.   Under Plaintiff's objection, Slocum testified that some time in the early part of the year 1857, a conversation was had at the office of the company between the president of the company, the witness, and Brewster, respecting his power as agent.   He wanted authority to write or issue policies for the Defendants ; he said he could do a large business, and a more desirable class of business, if he could issue policies.   " I don't recollect the particular words, but we declined, as we had not given such authority to agents."

It is then apparent that the powers of Brewster as agent were restricted to the receipt and forwarding to Defendants of applications for insurance, and authority to make a policy for only ten days ; and the certificates which were exhibited to the customers generally, contained information of the character and extent of the powers of the agent.   The declarations and acts of Brewster within the scope of his agency, if they had been admitted, would not be of any materiality.   The declarations and representations of the agent, when not expressly authorized by the principal, must, in order to bind him, be within the scope of his agency (N. Y. Life Insurance and Trust Co. *v.* Beebe, 3 Seld. 364 ; Olding *v.* Smith, 11 Eng. Law and Eq. 424 ; Very *v.* Levy, 13 How. U. S. Rep. 345).

In the case in 3 Selden (*supra*), Schermerhorn, the agent, swore that he was the agent of the Respondents in procuring a loan for them from the Appellants, and it was contended, on the part of the Appellants, that Respondents were concluded by his acts and representations, the same as if they were their own, upon the principle which pervades all cases of agency—that the principal is bound by all acts of his agent within the scope of his agency, which he holds him out to the world to possess, and that where the acts of the agent will bind the principal, there his representations, declarations, and admissions respecting the subject-matter will also bind him, if made at the same time, and constituting part of the

*res gestæ.* The Court say : " The declarations or representations of the agent, when not expressly authorized by the principal, must, in order to bind him, be within the scope of his agency. But that was not the case here. Schermerhorn's agency was to obtain a loan for the Respondents from the Appellants. His alleged declarations, which are relied upon, were entirely without the scope of such or any other agency." In that case, there was no evidence to show that the Respondents knew of the alleged representations of Schermerhorn, or that they ever authorized him to make them. So in the case at bar there is no evidence that these Defendants ever authorized Brewster to give the consents to the two assignments mentioned, or that they ever knew that he had given such consents, until after the happening of the loss under the policy. We have seen what were the actual powers conferred by the Defendants upon Brewster, and what was the scope of his agency.

Not only was the power to give the consents in question not within the scope of that agency, but the policy itself, and the blank consents endorsed thereon, gave notice to all holders of such policies that an agent of the company had no such power.

In view of all these considerations, the referee properly excluded the books kept by Brewster, and the entries therein. They were illegitimate to enlarge, alter, or modify his power as agent.

The judgment of the Supreme Court affirming the judgment upon the report of the referee was correct, and should be affirmed, with costs.

PARKER, J.—The question litigated in this action is, whether H. A. Brewster was the agent of the Defendants, and as such authorized to give their consent to the assignments of the policy, through which the Plaintiff claims it.

The referee nonsuited the Plaintiff, on the ground that he had failed to show that the Defendants had consented, as required by the policy, to the assignment of it, or that Brewster had any authority to give such consent.

It is very clear, I think, that Brewster had, in fact, no such

authority.    But it is insisted by the Plaintiff's counsel that the company dealt with Brewster in such a manner that he was justified in holding himself out to the public as its general agent; that he did represent himself to the Plaintiff as such agent, and, therefore, that the company is bound by his acts in signing the consent to the assignments.  It is not contended that the Plaintiff was induced to accept the consent of Brewster as that of the company, by any act of the company implying or recognizing the authority of Brewster to give it, which came to the knowledge of the Plaintiff, but that the acts of the company justified Brewster in assuming authority to give the consent, and therefore they are bound by it.

This is but stating, in another form, that Brewster was, in fact, the agent of the company, which proposition, as already intimated, I do not regard as sustained by the evidence.

Neither do I see anything in the evidence warranting the statement that the Defendants had an office in Rochester, in charge of which Brewster was acting as clerk.    The fact that he was authorized by the company, at his request, to purchase at their expense a policy register, in which to keep an account of the business which he should do for the company, comes far short of establishing the fact claimed for it.

I think the nonsuit was properly upheld by the General Term, and its judgment should be affirmed.

All affirm.