(23 Misc. Rep. 637.)

## ABRAMS v. PLATT.

(Supreme Court, Appellate Term. June 6, 1898.)

CARRIERS—LOSS OF GOODS—DELIVERY TO AGENT—EVIDENCE.

The plaintiff, a regular customer of the defendant express company, exhibited the usual card, indicative of his wish to ship goods; and, in apparent response thereto, a man wearing a badge with the name of the defendant company entered plaintiff's store, receipted for the goods, and took them away. The receipt thus signed was in a book of blanks which the company had furnished to plaintiff. At the time of this delivery a wagon was seen across the street, on which the name of the company appeared; but the man was not seen to come from it or return to it, and it was not shown to have belonged to the company. The man was not the one who usually called for goods, and had never been seen before at plaintiff's store. *Held*, in an action to recover the value of the goods, which were never delivered, that the evidence failed to show that the man in question was defendant's agent, and that the complaint should have been dismissed.

Appeal from Ninth district court.

Action by Lewis Abrams against Thomas C. Platt, as president of the United States Express Company. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

Francis G. Kimball, for appellant.

Joseph A. Davis, for respondent.

BEEKMAN, P. J. The plaintiff sues to recover the value of certain goods which he alleges were received by the defendant's company for transportation, but never delivered. The only issue in the case is whether the property was ever so received by the defendant, and upon this the trial justice found in favor of the plaintiff, and awarded judgment accordingly. After a careful consideration of the question, we are of the opinion that the evidence was insufficient to support such a finding. The plaintiff showed that he was a regular customer of the defendant's company, and had been supplied by it with a card intended to be placed outside of his store, as a notice to the company that he required its services, whenever such was the case. He had also received from it a book containing a large number of shipping receipts in blank, bearing upon them, in printed form, the company's name, and the conditions upon which goods would be received and carried by it. Whenever the

plaintiff desired to make a shipment through the company, he would display the card; and when the company responded, through its agent, the latter would receive the goods, and at the same time would sign one of the blanks, properly filled out, which were contained in the receipt book above mentioned. This book at all times remained in the possession of the plaintiff. It appears that on the 4th day of April, 1897, the plaintiff, having a shipment to make, exhibited his card; and, apparently in response to the call thus made, a man entered his store, received the packages from the shipping clerk, signed one of the receipts in the book, and took the goods away. The clerk says he had a shield on his cap, inscribed "United States Express Co.," and that on the other side of the street there was "a sort of a yellow wagon," on which the company's name appeared. He did not, however, see the man come from the wagon referred to, or return to it, nor did he observe what he did after he left the store with the goods. Upon his examination he gave the following testimony:

"Q. Do you know the man to whom you delivered the goods? A. No, sir. Q. You had never seen him before? A. I don't remember. Q. There are new men all the time? A. Once in a while their steady man is not on, and they put a different man on. Q. They are changing all the time? A. Not all the time. Q. Sometimes they have strange men? A. Yes, sir. Q. Have any men called for United States packages that month, other than the steady man? A. No, sir."

This is all the proof that was given on the part of the plaintiff to establish a delivery of the goods to the defendant's company. A motion to dismiss the complaint having been denied, the defendant offered proof tending to show that it had never received or transported any such goods; that on the day in question the only men in their employment covering the route which included plaintiff's store were four of their "steady" men, none of whom bore the name signed to the receipts; and that there was no such person in their employ, bearing that name. Taking the evidence as a whole, we do not think that the plaintiff established a delivery to the company. The burden rested upon him of showing, by a preponderance of proof, that the person assuming to act for the company was its agent, or that the company was in some way chargeable with responsibility for his acts. As was said in the case of Cronkite v. Wells, 32 N. Y. 247:

"As there must be an actual delivery to the carrier, or to some person authorized to act in his behalf, before his responsibility as such commences, of course it was incumbent upon the plaintiffs to show a delivery of the package to the defendants, or to some one authorized to receive it on their behalf, before they could be charged with the loss."

At the outset it may be taken to be well-settled law that the extra-judicial declaration of a person that he is the agent of another is not competent evidence of the fact. Stringham v. Insurance Co., 4 Abb. Dec. 315, 320. The existence of the relation must be established by direct proof, or by circumstantial evidence tending to connect the alleged principal with the person assuming to act for him, of such probative force as to fairly exclude any other reasonable hypothesis than that the relation actually existed. In the latter class

of cases the ultimate fact rests upon presumption, and the question in each case necessarily is: Are the facts expressly proven sufficient to support such a presumption? We are unable to find that such is the case here. There is not a single fact in evidence tending to sustain, or in any way justify, such a conclusion. The alleged agent was an utter stranger to the plaintiff, and had never before assumed to act for the defendant. He had, it is true, a badge upon his cap, with defendant's name upon it, but there is nothing in the case from which the slightest inference can be drawn that he received it from the defendant. It is also true that a wagon with defendant's name on it was seen on the street at the time, but there is no proof either that it belonged to the defendant or was under its control, or that the alleged agent came from it or returned to it, or had anything whatsoever to do with it. He did not even produce the defendant's form of receipt, but, as we have seen, signed one which the plaintiff had in his own possession. There is therefore nothing to show that he was invested by the defendant with any indicia of authority. In the case of Hughes v. Railroad Co., 36 N. Y. Super. Ct. 222, the evidence showed that the person claimed to be the servant of the defendant was upon one of its trains, wearing a brakeman's cap, and performing certain duties in connection with the operation of the train, in association with the engineer, conductor, and other persons who were engaged in its management. The court held that this was sufficient to support a presumption that he was a servant of the defendant. In Norris v. Kohler, 41 N. Y. 42, where the plaintiff sued to recover damages for injuries arising from the negligence of a person who was driving a wagon, it was held that proof of defendant's ownership of the horse and wagon would support a presumption that the driver was his servant. In the case of Svenson v. Steamship Co., 57 N. Y. 108, it was also held that proof of the ownership and control and management by the defendant of a steamship was prima facie evidence that a person working thereon was in its employ. At page 111 of the report, the court say:

"A mere admission of ownership would not have been significant, but the admission that at the time the defendant controlled and managed the vessel, unexplained, leads inevitably to the conclusion that those who were then employed upon her were the servants of the defendant."

The distinction between these cases and the one at bar is obvious. In each there was evidence showing that the alleged agent was working with or upon the property of the defendant, under circumstances from which it might reasonably be inferred that he was so doing with the defendant's authority. No such elements exist in the case at bar, and the trial justice should have granted the motion which was made at the close of the plaintiff's case to dismiss the complaint. The proof that was subsequently given by the defendant not only in no way supplemented the weakness of the plaintiff's case, but served to dispel the slightest doubt which might have existed upon the subject; so that at the close of the entire case there was an utter failure of proof that the goods in question had ever been received by the defendant's company. The plaintiff was un-

doubtedly the victim of an ingenious fraud, but that is his misfortune, for which the defendant is in no way legally responsible. The trial justice therefore erred in awarding judgment for the plaintiff, and for this error there must be a reversal.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.