# CASES AT LAW

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

NOVEMBER TERM, 1897.

---

THE AGRICULTURAL INSURANCE COMPANY OF WATER-
TOWN, NEW YORK, PLAINTIFF IN ERROR, v. RACHEL
FRITZ, EXECUTRIX OF THE WILL OF GEORGE FRITZ,
DECEASED, DEFENDANT IN ERROR.

1. R. F. agreed with one C., who solicited insurance for the Agricultural
Insurance Company, that certain property then belonging to her hus-
band should be insured in a specified sum and for a stipulated premium
and time, and that she would pay a balance of premium within a
short time. Within that time she went to the office of an agent of
the insurance company and there saw C., who, taking the balance of
premium offered, said that they were not ready for her but would send
"the paper" through the mail. Subsequently a policy of insurance,
written upon the blank policy in use by the insurance company, made
in her name as the insured, came by post to R. F.; who accepted and
retained it with her valuables until after the property insured was
destroyed by fire. *Held*, that the contract made with the company
was that which was stated in the policy and was not a parol contract
for insurance with the husband of R. F.
2. To bind a principal by a contract made with one dealt with as its
agent, it is necessary for the plaintiff to establish by due proof the
existence of sufficient power in the agent to make the contract.

211

On error to the Camden County Circuit Court.

Rachel Fritz, as the executrix of the will of George Fritz, deceased, declared against the Agricultural Insurance Company of Watertown, New York, upon a contract of insurance, alleging that the insurance company, in consideration of $12, paid to it by George Fritz, undertook to indemnify George Fritz against loss by fire to the extent of $700 upon his dwelling-house in Gloucester county, in this state, and $300 upon his household furniture and $200 upon his piano, in that dwelling, for the term of three years from the 1st of January, 1892, and that the property insured, which was fully worth the amount of that insurance, was wholly destroyed by fire on the 20th of November, 1894. To which declaration the insurance company pleaded, first, the general issue, and then that the contract sued upon had been reduced to writing, which writing contained several conditions, among which was one to the effect that if the insured property should be mortgaged during the term of the insurance, the insurance should be void unless the mortgaging thereof should be assented to by the insurance company, and another to the effect that suit for recovery of a claim under the contract should not be sustainable unless it should be commenced within twelve months next after the happening of the fire insured against, and that both those conditions had been violated, the former by mortgage without consent on the 11th of May, 1892, and the latter by the fact that this suit was commenced on the 31st of July, 1896, which was more than twelve months after the fire, which occurred on the 20th of November, 1894.

At the trial it was proved that George Fritz had been insured by the Agricultural Insurance Company in respect to the same property upon two former occasions by written policies of insurance, one covering the period of time between April 19th, 1881, and April 19th, 1884, and the other covering a period of time from October 29th, 1884, to October 29th, 1887; that the contract of insurance in suit was nego-

tiated by Rachel Fritz, the wife of George Fritz, with one Chambers, who was known to her to be traveling about the country as a solicitor of insurance for the plaintiff in error; that prior to her first interview with Chambers, George Fritz had given her $8 with which to secure $1,000 insurance; that Chambers persuaded her that the insurance should be $1,500, and she agreed with him that it should be that sum, covering a period of three years, for a premium of $12, and paid him the $8 her husband had given her and agreed to pay an additional $4 at Vineland; that less than a week later she went to Vineland, to the office of James Loughran & Son, the agents of the insurance company at Vineland, and there saw Chambers, to whom she handed the $4; that Chambers then said to her that "they" were not ready for her, that he would send "the paper" through the mail; that two weeks later she received through the mail a policy of insurance upon the blanks then used by the company, containing all the terms she had agreed upon, in addition to its usual conditions, among which were the two pleaded, but insuring Rachel instead of George Fritz; that she did not look at it, but put it in the drawer of a sideboard where valuable papers were kept, and there it remained locked up until it was rescued by her daughter, by her direction, while the house was on fire; that, before the fire, George Fritz died, leaving a will dated on the 11th of May, 1888, by which he devised and bequeathed his entire estate to his wife, and that after the fire the policy was examined by a son of Mrs. Fritz, who discovered that it was made out in the name of Mrs. Fritz as the person insured.

When the plaintiff below rested, the defendant moved that she be nonsuited—*first,* because she had failed to make proof of the contract sued upon, and, *second,* because she had not shown that Chambers had power to make either the contract urged in suit or any other contract which would bind the insurance company. The trial justice denied the nonsuit.

At the conclusion of the defendant's proofs, which were limited to evidence that Mrs. Fritz, under oath, made proof

of the loss under the written policy delivered to her, the defendant asked the trial justice to instruct the jury to find for it, with which request the trial justice refused to comply. Exception was duly taken to these determinations of the trial court, and upon them, among others, error has been assigned.

For the plaintiff in error, *James Buchanan* (with whom was *A. H. Sawyer*, of New York).

For the defendant in error, *John J. Crandall*.

The opinion of the court was delivered by

THE CHANCELLOR.   The only testimony offered to establish the contract sued upon was given by Rachel Fritz. Stated in narrative form, it is this :

"Mr. Chambers came around again on the 26th of January and I told him that he *would have it* insured for $1,000. He said that I *ought to have it* insured for $1,500, and I told him I had not any more money but $8. Then he told me I could go down to Vineland and pay the other $4."

She states that this conversation took place on Saturday ; that she paid Chambers the $8, and on the following Wednesday took $4 to Vineland, and gave it to Chambers, in Mr. Loughran's office, and that Chambers then said to her that "he," using her language, "would send *the paper* through the mail, or something like that, and that *they were not ready for me*, or something to that effect, and I came out, and in two weeks after I got *the paper* through the mail, and I never opened it ; it was in a large envelope.   *   *   *   I put it in a sideboard drawer.   I never even opened it.   *   *   *   Well, of course, the sideboard drawer was saved, and it was along with some other papers.   I never opened it and never knew what was in it.   *   *   *   I had a lot of papers in there, not exactly that one paper or two papers, but it was a drawer that I always kept locked and kept the key, and, of course, while the fire was raging, I got my daughter to go in and take this sideboard drawer out, and that is all that I

saved of it. I know there was papers in there I really needed—other things.

"*Q.* In the interview with Mr. Chambers did he tell you you would shortly receive a policy through the mail?

"*A.* I don't know what Mr. Chambers said at all. He said *he wasn't ready for me* and he would send *this paper* through the mail."

Mrs. Fritz does not, anywhere in her testimony, say that it was her purpose to have a verbal contract of insurance. Nor does she say that she did not expect an insurance policy in writing, after the fashion of the two former policies. There is nothing in the language in which she states the negotiation she had with Chambers which is inconsistent with the assumption that she negotiated for future insurance, to be procured by Chambers. On the contrary, the import of the language used, and the interpretation given to the negotiation by the subsequent conduct of both Mrs. Fritz and Chambers, in that the latter announced that "the paper" should be sent through the mail, and the former failed to remonstrate that the insurance contract was already complete without writing, but without reply—in silent acquiescence in the fact that she was to have "the paper"—went away and afterwards accepted the policy, which came, as the insurance intended, and put it away with the valuable papers of the household, indicate with irresistible force that a written policy of insurance was that which was bargained for. And, whatever may have been the condition of Mrs. Fritz's mind, it is clear that Chambers did not contemplate a verbal contract. When she handed him the $4, he apologized that "they" were not ready for her, and promised that "the paper" should be sent her by mail. We think that the testimony of Mrs. Fritz will bear but one construction—that her mind and the mind of Chambers met in agreement that the contract of insurance negotiated for was to be expressed by "the paper" which should reach her by mail—and we think that the testimony does not prove that either she or Chambers intended or understood that they had

completed the insurance. Their bargaining was to be completed by the issuance of a policy by the company.

The contract being for a policy of insurance, it will be assumed that the form of policy intended was the form then used by the insuring company. *Hubbard* v. *Hartford Fire Insurance Co.*, 33 *Iowa* 325; *Smith* v. *State Insurance Co.*, 64 *Iowa* 716; *De Grove* v. *Metropolitan Insurance Co.*, 61 *N. Y.* 594; *Eureka Insurance Co.* v. *Robinson*, 56 *Pa. St.* 256. Such was the form of the policy sent to Mrs. Fritz.

The policy sent and accepted, as the result of the negotiation with Chambers, is with Rachel Fritz as the insured. So far as the evidence shows, it is the only contract that was made. It may possibly be that Mrs. Fritz intended that it should be made with her husband, or it may be that in view of her husband's will, then executed, which provided that his entire property should, at his death, become hers, she conceived that she had an insurable interest, or it may be that the insertion of her name in the policy, instead of her husband's, was a mistake. Whatever the truth may be in that respect, the fact remains that the only contract assented to by the company was with the wife.

We think that the contract declared upon was not proved.

Passing to the second ground for nonsuit or direction of the jury, an even more obvious error appears. There is not a particle of evidence that Chambers had power to bind the plaintiff in error to a verbal insurance contract. It is disclosed in the fact that he was accustomed to solicit insurance for the plaintiff in error, and in the fact that after his negotiation in the case of Fritz, a policy was issued in accordance with the conclusion reached between him and Mrs. Fritz, that he had some connection with that company. But there is no evidence to show that he could do more than solicit a contract of insurance and submit to the company the proposition he should be able to procure. Proof of mere assumption of authority by him, without proof also of acquiescence by the company in the appearance he held out, or of ratification by it of his acts, in pursuance of the power assumed, with knowl-

edge of the assumption which shall have misled the insured as to the true extent of the authority he possessed, will not establish the extent of the agent's power. *Stringham* v. *St. Nicholas Insurance Co.*, 3 *Keyes* 280; *Bush* v. *Westchester Fire Insurance Co.*, 63 *N. Y.* 531; *Elw. Ev. Ag.* 16, *note.*

The proofs do not show an agency in Chambers sufficiently general to justify an inference that he possessed authority to bind the plaintiff in error in the parol contract alleged. At best it makes him appear to have been a mere solicitor for insurance under the stipulations and conditions of the policy in use by the plaintiff in error.

It is impossible to infer from anything that appears in proof that he possessed power to disregard the carefully and maturely considered stipulations and conditions of the policy of insurance in use by the plaintiff in error, and make the ill-guarded, naked parol contract sued upon. *De Grove* v. *Metropolitan Insurance Co.*, *supra.*

It is clear that the authority of Chambers to make the contract sued upon did not appear.

Because of the plain insufficiency of the proofs to establish the contract alleged in the declaration, the jury should have been controlled as the plaintiff in error requested. *American Saw Co.* v. *First National Bank*, 31 *Vroom* 417.

The judgment below will be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, COLLINS, DEPUE, DIXON, GUMMERE, LUDLOW, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, NIXON, VREDENBURGH. 13.