### BANKERS INDEMNITY INS. CO. v. PINKERTON.*
### No. 8257.

Circuit Court of Appeals, Ninth Circuit.
March 22, 1937.

*Rehearing denied May 10, 1937.

Charles B. Morris, Leo J. McEnerney, and Jered A. Maguire, all of San Francisco, Cal. (J. Bruce Fratis, of San Francisco, of counsel), for appellant.

Jesse E. Nichols and Harry M. Gross, both of Oakland, Cal., G. Levin Aynesworth, of Fresno, Cal., and Paul B. Richard, of Oakland, Cal., for appellee.

Before WILBUR and GARRECHT, Circuit Judges, and NETERER, District Judge.

NETERER, District Judge.

The appellant was sued upon an oral contract of public liability insurance claimed to have been made on May 5, 1933, between one Louis Vercesi and the appellant company. On May 7th, two days thereafter, appellee was injured in an automobile accident and recovered a judgment again Vercesi for damages to her for injury. The claim was based upon negligence on the part of Vercesi's employee in the operation of the automobile truck said to be covered by the insurance. No part of the judgment thus obtained was paid and she caused writ of execution to issue. The writ was returned by the sheriff to whom issued unsatisfied.

The claim is that on the night of May 5, 1933, one Joseph Gallot, on behalf of Vercesi, conversed with Joseph Bobba, alleged agent for the appellant company under an agency agreement between appellant and Joseph Bobba covering Oakland, Cal., and vicinity; that the oral contract in suit was made in which appellant company was insurer and Vercesi was the insured for liability to the extent of $10,000 for injury to one person and $20,000 for injury to two or more persons.

The appellant denied the contract and authority of Bobba to enter into an oral contract, and upon the issue thus framed the case was tried to a jury and a verdict returned in favor of the appellee on the insurance contract for $10,000 on the 24th day of January, 1936. After the entry of judgment, the appellee moved the trial court for an amendment to said judgment by adding thereto interest at the rate of 7 per cent. per annum from the 9th day of November, 1933, the date of her judgment against the insured. On the 31st day of March, 1936, the trial court amended the judgment accordingly by including interest. By inadvertence there was computed interest on interest for a short time. On the 25th day of August,

1936, appellee filed a remission of said judgment so amended so as to provide that the principal sum of $10,000 with interest thereon at 7 per cent. per annum from November 9, 1933, may be satisfied by paying the sum of $10,000, together with interest at the rate of 7 per cent. per annum from the 9th day of November, 1933, until paid.

Two petitions for appeal were allowed. An assignment of errors was filed with each petition. The first petition was filed on the 30th day of March, 1936, and therewith 23 assignments of error. The second petition for appeal was filed April 22, 1936, and therewith 28 assignments of error. The difference in the assignments of error is that in the last assignments, 23 to 28, error is charged in amending the judgment by order of court on March 31, 1936. Since the last petition for appeal was filed within ninety days after the entry of judgment and includes all of the assignments in the first assignment of errors, the court will consider only the assignments of error last filed. All of the assigned errors are treated in appellant's brief under ten heads and may be comprehended in three general assignments and will be so considered.

Errors 1 to 3, inclusive, insufficiency of the evidence to sustain the verdict.

Errors 4 to 6, error in the admission of certain testimony.

Errors 7 to 10, errors in amending the judgment by order of court on March 31, 1936.

■ As to the first to third assignments of error, the appellee's testimony in support of an oral contract of insurance was given by witnesses Gallot, Vercesi, and Bobba. Concisely stated, it appears that at the request of Vercesi on the evening of the 5th of May, 1933, Gallot called Mr. Bobba upon the telephone and asked for coverage for Vercesi's truck for collision, property damage, and public liability insurance.

Mr. Gallot testified as follows:

"Upon calling Mr. Bobba I asked him to cover the truck for collision insurance, and property damage insurance and liability insurance. I believe I asked him to cover the truck for full coverage collision. I am not entirely clear on that point and liability insurance up to a ten thousand and twenty thousand limit or larger. I remember he gave me a figure which was a very small amount of money, more than the basic limits of five thousand and ten thousand, and I discussed it with the Vercesis for a moment and they decided they wanted the larger coverage. I believe I stopped at ten and twenty thousand, I am not sure. The thing may have gone a little further than that limit. I believe the limitations were ten thousand and twenty thousand. That is the best of my recollection. At that time I supplied Mr. Bobba with information relative to the truck itself. I gave him the motor number and serial number of the truck, and description as to the capacity and the weight of the truck which was necessary for the insurance. I asked Bobba to place the insurance effective right away, immediately, so that the insurance would go into effect immediately insuring Mr. Vercesi because he was sending his truck out of town late that night with a load of merchandise headed for Los Angeles. Mr. Bobba said he would come down the following morning to see Mr. Vercesi at his residence and collect the premium. In that conversation we spoke of the value of the truck and the purchase price. We looked up a contract regarding the purchase price showing the price of the truck. Mr. Vercesi took the contract out of the file and gave the information to Mr. Bobba over the phone regarding the purchase price. That is where we secured the motor and serial number. That was information Mr. Bobba requested of me on the phone. In response to my request the truck be covered that night, Mr. Bobba said it would be covered. That it would be covered immediately."

He further said:

"My understanding was that Bobba was covering the truck effective immediately. The insurance was to be effective right away and if Vercesi had an accident with that truck fifteen minutes later he was to be covered. That was my understanding of the insurance with Mr. Bobba. That was the agreement over the phone. Mr. Bobba said it was covered. As near as I can recall the exact conversation with Bobba was as follows: I asked him to place the coverage for this truck in the forms specified, collision, property damage and liability on Mr. Vercesi's truck, effective immediately. I said, 'Now, Mr. Bobba, if you will come down to Mr. Vercesi's home tomorrow morning, Mr. Vercesi will be glad to make arrangements to pay the

premium on the truck.' Mr. Bobba replied that he would cover the truck immediately, that he would be down the following morning. I asked him if he wanted the address. He said, 'Yes.' I gave it to him and he said, 'I think I know Mr. Vercesi, I placed some other insurance for him in the past on houses.' I said, 'Well, that is probably Mr. Vercesi, Sr., Mr. Vercesi, Jr., does not own any houses.' Bobba said, 'All right, you tell Mr. Vercesi not to worry, if he wants to send the truck out.' "

Vercesi, being in Gallot's presence at the time of the conversation with Bobba, said:

"During that month I requested Mr. Gene Gallot to call Mr. Bobba with respect to placing insurance on a truck. I gave that instruction to Mr. Gallot on May 5, 1933, in the evening. I was at my home at the time and I heard Mr. Gallot talking on the phone. * * *

"He asked me if I wanted five or ten thousand. Gallot did say something over the phone about an amount. I told Mr. Gallot that I wanted ten and twenty liability and I wanted some property damage and some collision. * * *

"On the evening of May 5th, when I went home, I did not expect to send the truck out that night, but I had a chance to and I figured if I could get insurance I would send it and if I could not I wouldn't. I got insurance that night. I understood that I got insurance that night and it became effective that night. * * *

"Mr. Gallot did not tell me that the insurance would go into effect Saturday morning at eight o'clock, he told me it went into effect that night. * * *

"On the following day I saw Mr. Joseph Bobba up at his office in Oakland, 12th and Broadway. I don't recall who was with me on Saturday. I don't believe there was anyone. I believe I went up alone. On arriving there I had a conversation with Mr. Bobba. I entered his office and I told him that I was Vercesi, the fellow that Mr. Gallot called the night before about insurance for. I asked him if he placed my insurance and he said he did. I asked him who with. He told me the Bankers Indemnity Company. I asked him if it was a good Company, and he told me it was one of the best. I asked him how much it was going to

cost me so he figures there for a little while and he turned back to me and said— he told me $171.00."

It was shown that on May 9th following Vercesi paid and Bobba accepted payment on the premium and Bobba delivered a receipt showing such partial payment with coverage.

The necessary elements to effectuate an oral contract of insurance are: (a) Subject-matter; (b) the risk; (c) premium; (d) duration of the risk; (e) the amount of insurance. All of these elements are concisely stated and fully covered by the testimony. Even though all these elements had not been expressly agreed to, "the rule or implication of details or the terms and conditions such as are commonly contained in insurance policies takes care of those other things not so expressly agreed upon." Preferred Risk Fire Ins. Co. v. Neet, 262 Ky. 257, 90 S.W.(2d) 39, at pages 40, 42.[1]

This court in Globe & Rutgers Fire Ins. Co. v. Draper, 66 F.(2d) 985-988, held that it is not essential to the oral contract of insurance that every detail should be agreed upon, but that an implied agreement concerning essentials is as good as an express agreement, and where no express agreement was reached as to the term risk the parol contract will not be invalid for uncertainty in that particular if the parties' intent as to its duration can be gathered from the facts and circumstances in evidence. Cleveland Oil & Paint Mfg. Co. v. Norwich Union Fire Ins. Co., 34 Or. 228, 55 P. 435. There this court also held that if the premium to be paid is not specified in the oral agreement, the contract of insurance or premium will be at the customary rates. See, also, Ætna Ins. Co. of Hartford, Conn. v. Licking Valley Milling Co. (C.C.A.) 19 F.(2d) 177, at page 180. Compare Mass. Bonding & Ins. Co. v. R. E. Parsons Electric Co. (C.C.A.) 61 F.(2d) 264, at pages 270, 271, 92 A.L.R. 218, and Eames v. Home Ins. Co., 94 U.S. 621, 629, 24 L.Ed. 298. In the latter case it is said: "It will be presumed that they contemplate such form of policy, containing such conditions and limitations as are usual in such cases." "The contention, therefore, that the insurance in question was oral, and therefore did not contain the clause confining liability to legal contracts, can-

[1] 1 Joyce on Insurance, §§ 46–50; 1 Cooley Briefs on Insurance, pages 535, 536, and 556; Couch Cyc. of Insurance Law, § 77; 26 Corpus Juris at p. 49.

not be sustained." Maryland Casualty Co. v. Industrial Accident Commission, 179 Cal. 716, 721, 178 P. 858, 860. It was also held in that case the presumption would be on an oral contract of insurance that the company would issue its regular form of policy. This court in National Liberty Ins. Co. of America v. Milligan, 10 F.(2d) 483, held that a finding for the plaintiff on an issue of oral contract of insurance was binding upon this court. The presumption that an oral contract of insurance contemplates the issuance of a policy in the usual form is held by Agricultural Co. v. Fritz, 61 N.J.Law, 211, 39 A. 910; Duff v. Fire Ass'n of Philadelphia, 129 Mo. 460, 30 S.W. 1034; Connecticut Fire Ins. Co. v. Fields (Tex.Civ.App.) 236 S. W. 790, 792; National Liberty Ins. Co., Etc., v. Milligan, supra. It is obvious from the testimony that the clear intent of the parties to this oral contract of insurance was to function under the provisions of the laws of California and upon the belief that the laws of California did become a part of the contract and implied a contract of insurance with all the terms and conditions contained in the usual form of policy, including the provisions of the statute which were incorporated in the usual form of policy.

In Bryson v. International Indemnity Co., 88 Cal.App. 100, on page 103, 262 P. 790, 792, the court said:

"Since the policy provides for an action on such a judgment by the injured person against the company, under the circumstances stated, the evident intent is that such person shall have the rights which the insolvent insured would have had if he had paid the judgment."

And in Van Derhoof v. Chambon, 121 Cal.App. 118, 8 P.(2d) 925, the court held that the injured party must, before he can sue the insurance company, reduce his claim to judgment. While this case is cited by the appellant, it supports the appellee's contention.

In Coleman v. New Amsterdam Casualty Co., 247 N.Y. 271, 160 N.E. 367, 369, 72 A.L.R. 1443, Mr. Justice Cardozo of the Supreme Court, then Chief Justice of the Court of Appeals for New York, in passing upon an issue in a similar statute to the California statute, said:

"The effect of the statute is to give to the injured claimant a cause. of action against an insurer for the same relief that would be due to a solvent principal seeking indemnity and reimbursement after the judgment had been satisfied."

It is obvious to us that all of the cases cited by appellant are clearly distinguished and do not contain the rule contended for. And in Walters v. West American Ins. Co., 4 Cal.App.(2d) 581, 41 P.(2d) 355, 357, 43 P.(2d) 306, dicta was expressed that an oral contract of insurance does not include the requirements of the 1919 California statute for liability policies. The Appellate Court in its opinion states:

"Our attention has not been directed to any case in which provisions which are not for the benefit of either of the contracting parties, but which are solely a matter of statutory. requirement in written insurance policies, are held to be included in an oral contract founded not upon the express agreement of the parties but upon the equitable doctrine of estoppel."

In Preferred Risk Fire Insurance Company v. Neet, supra, the court held that an oral contract of insurance will be presumed binding and made in contemplation of the issuance of the policy containing the customary conditions in use and says:

"To permit escape from liability because of one's own dereliction or deviation from the law offends abstract justice and general legal principles."

It appears obvious to us from a consideration of the authorities and the testimony based upon logic and reason that an obligation of insurance upon an oral contract is created from appellant to appellee, containing the provisions of the usual form of policy.

The agency of Bobba for the appellant is clearly established. He "is appointed for the purpose of procuring for the company acceptable applications for the classes of insurance hereinafter named * * * and to receive and receipt for premiums on such insurance. * * *" (Par. 1 Agreement.)

"The agent shall keep true * * * records of all policies, certificates, *binders* and other forms *issued* and of all business done for the company through him. * * *" (Italics supplied.) (Par. 6.)

He was duly appointed as agent within the state of California by the Bankers Indemnity Insurance Company, appellant, by notice to the insurance commissioner, and "authorized to transact business in

this state." License was issued by the state insurance commissioner certifying, "That Joseph L. Bobba * * * having complied with the requirements of law, is hereby licensed as an insurance agent to solicit, negotiate or *effect* contracts for fire, *automobile* and *casualty* insurance * * * until July 1, 1933. * * *" (Italics supplied.)

This clearly comprehends oral business having immediate *binding* force. A well-reasoned case on a like contract is Yasbec v. Hartford Accident and Indemnity Co., 132 Kan. 827, 297 P. 422. The reasonableness of power for instant action by the agent to meet exigencies of public demand and sharp competition for immediate effective insurance, to "effect binders and other forms" and comply with requests frequently made by telephone, now a uniform practice, requires the power exercised and we believe was given. Tatum v. Hartford Fire Insurance Co. (D.C.) 2 F.(2d) 275. O'Brien v. New Zealand, Etc., Ins. Co., 108 Cal. 227, 41 P. 298, does not take from this conclusion. That case did not deal with the power given to and relation exercised by the agent for the public, but rather between principal and agent, and in that case the agency agreement did not endow the representative with the power as is given Bobba in the instant agreement.

The Political Code of California 1931, § 633, defines an insurance agent as "an individual * * * [or] association * * * authorized to solicit, negotiate, or effect contracts * * * insurance," etc. The appellant company could not place any insurance contract in the state of California except through a resident agent. Section 633d, Insurance Act, supra. This provision, no doubt, was for the protection of policy holders in the state. Foursha v. American Ins. Co., 224 Mo.App. 1071, 34 S.W.(2d) 552. These assignments have no merit.

■ Assignments 4 and 5 will be considered together. The question objected to was on cross-examination of Bobba and the witness was asked whether on other occasions he had covered insurance before policy was issued. It was not error to permit the question. The authority to do so was an issue denied by the appellant and the course of dealing would tend to elucidate the fact. The exercise of such authority under his appointment would tend to determine the agent's power

and reflect the right of the insured which must rest on the principle that the authority of the agent is coextensive with the business intrusted to him. Nertney v. National Fire Ins. Co. of Hartford, 199 Iowa, 1358, 203 N.W. 826; Cooley Briefs on Insurance, 345. The inquiry tended directly to unfold such exercise of power and was proper. Boever v. Great American Ins. Co. (Iowa) 266 N.W. 276.

■ The sixth assignment is not error. There the answer was that on rare occasions witness had covered insured after accident to protect coverage given by an agent, even though the policy had not been issued. It tended to show also that the company considered oral coverage given by the agent as binding. In the instant case it was material whether such had been done or sanctioned for it shows the appellant regarded as binding the oral covering agreement, and that was the purpose of the evidence and the answer "on rare occasions" was not in any sense prejudicial. Western Indemnity Co. v. I. A. C., 182 Cal. 709, 190 P. 27, is beside the point. In that case there was no contract. The res was destroyed, there was nothing to insure. The record here shows the inquiry was only made to show the course of conduct pursuant to the agency agreement such as Bobba operated under.

■ Assignments 7 to 10 must be considered together. The seventh assignment inspires the inquiry whether the court had a right to amend the judgment on the 31st day of March, when on the 30th day of March a petition for appeal had been granted and citation on appeal had been issued. The order allowing the appeal and fixing supersedeas bond did provide that when the bond was filed and approved it shall operate as a supersedeas of said judgment and stay all other and further proceedings until the termination of the appeal. The bond was filed on the 31st day of March, the same day as the order amending the judgment. It is suggested in appellee's brief that it must be presumed that the order of the trial court allowing the motion to amend was made prior to the filing of the bond on appeal to operate as supersedeas and thus deprive the trial court of jurisdiction. This is immaterial since the supersedeas had nothing to do with the perfection of the appeal. The power of the trial court was suspended to proceed further in the cause when the appeal was perfected.

The Supreme Court in Hovey v. McDonald, 109 U.S. 150, 3 S.Ct. 136, 140, 27 L.Ed. 888, said:

"One of the qualifications of the general rule as to the suspensive effect of an appeal is that the inferior court may perfect its judgment or decree. * * * If any obvious mistake has occurred it may be corrected; as, where the jury by mistake has given damages in a penal action, or has given damages for a larger sum than the declaration demanded. * * * And it is laid down as a general rule, at law (the principle of which is equally applicable to chancery proceedings), that those things which are amendable before error brought are amendable afterwards."

It is obvious from the record that the omission of interest from the judgment was not erroneously done, but was rather intentionally omitted by the court by limiting the amount of the verdict to a definite sum if it found for the plaintiff. The colloquy engaged between counsel and the court after instruction of the jury and before it retired, and no objection having been taken to the instruction of the court, and withdrawing from the jury's consideration the item of costs which had been submitted and which was waived in open court by appellee, show intentional omission and not oversight on the item of interest. The parties should be bound by that record.

The judgment as first entered is affirmed, the amended judgment is reversed, with cost of certifying and printing the portion of the transcript of the record on appeal on amended judgment $21.34 taxed against appellee, all other costs taxed against appellant.