## TOWERY v. UNITED STATES.
### No. 6567.

Circuit Court of Appeals, Seventh Circuit.
June 18, 1938.

Before SPARKS, MAJOR, and TRE-
ANOR, Circuit Judges.

TREANOR, Circuit Judge.

This is an appeal from a judgment of the District Court dismissing the suit at plaintiff's cost. The suit was brought on claims under two war risk insurance policies, the plaintiff seeking to recover as beneficiary under the policies for death benefits and as administrator for total permanent disability benefits.[1]

The complaint alleged that insured, the deceased, became totally and permanently disabled on June 18, 1919, during the life of the policy; that the insured thereby became entitled to receive monthly payments in installments of $57.50 each; and that insured died April 22, 1927. The plaintiff further states in his complaint that under the policy the defendant agreed to pay to the beneficiary on the death of the insured like installments until there should be paid a total of 240 monthly installments, less whatever number of installments, if any, which had been paid to the insured.

The defense of statute of limitations was raised by motion to dismiss and the motion was sustained.

The following statutory provisions were the basis of the District Court's granting a motion to dismiss:[2] "No suit on yearly renewable term insurance shall be allowed under this section unless the same shall have been brought within six years after the right accrued for which the claim is made or within one year after July 3, 1930, whichever is the later date * * *: Provided, That for the purposes of this section it shall be deemed that the right accrued on the happening of the contingency on which the claim is founded * * *."

It is the defendant's contention that the "happening of the contingency" upon which the claims in the instant case are founded was the "alleged occurrence of permanent total disability of the insured;" and that the occurrence of the permanent total disability of the insured in 1919 started the statute of limitations running against the plaintiff's claims, both as personal representative of the insured and as beneficiary under the policies.

If the defendant's contention is correct

Edward H. S. Martin and Phillip B. Leviton, both of Chicago, Ill., for appellant.

J. Gregory Bruce, of Washington, D. C., Michael L. Igoe, U. S. Atty., and William M. Lytle, Atty., Department of Justice, both of Chicago, Ill., Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., and Wilbur C. Pickett and Fendall Marbury, Sp. Assts. to Atty. Gen., for the United States.

[1] The two policies were identical and we shall treat them as one policy for purposes of our discussion.

[2] 38 U.S.C.A. § 445 (Section 19, World War Veterans' Act 1924, as amended July 3, 1930).

the District Court properly sustained the motion to dismiss, since under the government's theory the statutory period had expired long before suit was brought.

It is clear that the period of limitation begins to run when "the right accrued." The "right" is the right which is asserted in the suit; and by further statutory declaration this right accrues upon "the happening of the contingency on which the claim was founded." But the right which has accrued is a *right* "for which the claim is made." And by force of the foregoing language, the right which is asserted by the allegations of the complaint in this case is a right to receive payment of insurance benefits for which claims are made, that is, total and permanent disability benefits and death benefits.

At the outset we should note that the contract of insurance covers two rights for each of which a claim may be made, a right which may accrue to the insured for disability benefits; and a right which may accrue to the beneficiary for death benefits. Our question then is, What was the contingency upon which the respective claims for benefits under the insurance policy was founded, since each right in suit accrued upon the happening of that contingency?

For the purposes of a suit to enforce a right, for which a claim is made, the contingency upon which the claim is founded must bear such a relation to the claim that, in the case of the non-happening of the contingency, the claim is unenforcible. By the terms of the contract of insurance contained in the policy a claim for death benefits could not be enforced without the happening of the death of the insured. But if no question of lapse of policy by reason of non-payment of premiums is involved in a suit, it is not necessary for a beneficiary to prove that there has been total and permanent disability. When, as in the instant case, the insured had discontinued payment of premiums several years before his death, it would be an essential fact of plaintiff's case that total and permanent disability occurred at a time prior to the discontinuance of the payment of the premiums. Otherwise the beneficiary would fail to show the existence of a valid contractual obligation at the time of the death of the insured. But it is clear that the claim for death benefits is founded on the "happening of the contingency" of total and permanent disability only in the same sense that it is founded on the "happening of the contingency" of the payment of insurance premiums during the life of the insured.

The term "contingency" is not defined by the statute. Consequently, if the contract of insurance does not disclose the "contingency" the statutory limitation cannot be applied, since courts are not at liberty to devise a "contingency" upon which to found a claim. But there should be no difficulty in determining the "contingency" upon which a claim for insurance benefits is founded in view of the definite designation of the two possible contingencies in the language of the contract of insurance.

Under the terms of the insurance policy the government agrees to pay a principal amount, converted into monthly installments, "to the beneficiary or beneficiaries hereinafter designated, commencing upon the death of the insured, while the insurance is in force." It is apparent from the provisions of the contract of insurance that a beneficiary has no enforcible legal claim for the payment of benefit installments until the death of the insured, and it is difficult to perceive how the happening of the contingency of "total and permanent disability" can be the foundation of a claim for money payments when such claim is not legally enforcible until the happening of another contingency, the death of the insured; and when the claim may be enforcible without the happening of the first contingency.

The insurance contract between the government and the insured binds the government to pay a principal amount in stated monthly installments, the number of installments being limited to 240. By the terms of the policy the government is obligated to pay the *insured* monthly installments in case of total and permanent disability, the obligation to pay "commencing with such disability as established by the award of the director of the Bureau and continuing during such disability." If the insured should collect the 240 installments, the contractual obligation of the government is at an end. But there is a further contractual obligation running to the *beneficiary*, the maturing of which is contingent upon the death of the insured. The insurance contract combines the features of both disability and life insurance. The government is no less obligated in respect to the life insurance feature than in respect to the total and permanent dis-

ability feature, and no less legally obligated to the persons who become entitled to the life insurance benefits than to the insured if he becomes entitled to the disability benefits. But since by the terms of the policy the government's liability for payment is limited to 240 payments, it may happen in a particular case that the government can discharge its obligation by making monthly payments during the life of the insured. But the government cannot discharge any obligation to the beneficiary under the insurance contract during the lifetime of the insured for the simple reason that no obligation exists in favor of the beneficiary until the death of the insured. 'Upon the death of the insured the beneficiary, by the terms of the contract, is entitled to receive monthly installments for a period not exceeding 240 months. The conclusion seems inescapable that factually and legally the claim for these monthly installments is founded upon the death of the insured. When that contingency takes place, the legal right to the payment of such installments has accrued.

We conclude that the happening of the contingency on which the claim of the beneficiary is founded is the occurrence of the death of the insured; and, consequently, the right for which the claim is made accrued at the death of the insured.

■ In respect to the right of the insured to receive monthly installments in case of total and permanent disability the insurance contract provides for payment of monthly installments "to the insured, if he/she, while this insurance is in force, shall become totally and permanently disabled, *commencing with such disability* as established by the award of the director of the Bureau and continuing during such disability." (Our italics.) It is clear from the foregoing that if the disability benefit consisted of a determinable amount, unaffected by the termination of disability, the "happening of the contingency on which the claim was founded" would be the inception of the condition of total and permanent disability; and by the terms of the statute the right would accrue and the statute of limitations would begin to run at that time, even if the determinable amount should be payable in monthly installments. But the contract of insurance against permanent and total disability provides for possibility of discontinuance of such disability, as well as its continuance, and limits monthly payments to such time as the disability continues. In other words, by the very terms of the contract of insurance the right to payment of disability benefits which accrues upon the inception of permanent and total disability is in fact a right to the payment of the several installments as each becomes due during the continuance of the disability. Consequently, continuance of disability is an element in the contingency upon which the claim is founded since no installment becomes due and payable except during the continuance of disability. In the case of death a right accrues to the beneficiary to payment of all death benefits which will ever become payable under the terms of the contract. But by the terms of the contract the right of the insured to receive any particular payment of a monthly installment cannot accrue legally until the payable date arrives during continuance of disability, since the government owes no duty to make payment on any other contingency.

It necessarily follows that the statute of limitations cannot start running against the insured, in respect to any particular installment of disability benefits, before the payable date for such installment, since the arrival of the payable date during continuance of disability consummates the contingency upon which the claim is founded.

■ At the death of the insured on April 22, 1927, any right to payment of disability benefits ceased to exist. On February 11, 1932, the running of the statute of limitations was suspended since on that date the administrator filed his claim for installments for total permanent disability benefits which had become due up to the date of the death of the insured. Consequently, the bar of the statute was not effective as to any installments payable within six years prior to February 11, 1932, and before the death of the insured; therefore the administrator had a valid enforcible claim for all monthly installments of disability benefits which accrued during the period from February 11, 1926 up to and including the date of death of the insured, April 22, 1927.

■ The government has urged that the view, which we are now adopting, runs counter to the purpose of the statutory limitations. But, as pointed out in our discussion, the statute neither designates nor defines "contingency"; and we must assume that Congress used the term "contingency" with knowledge of the provisions

of the yearly renewable term insurance policies and of the rights and duties created thereby. We cannot assume an intention on the part of Congress to cut off claims arbitrarily when it used language which necessarily prolonged the life of the claims, if applied with due regard for the provisions of the contracts of insurance under which the claims arose. That it was not the purpose of Congress to cut off, but to continue protection of, interests of persons entitled to insurance benefits, was indicated by the fact that the statute expressly authorized suits to be brought any time prior to July 3, 1931, regardless of the time of the accrual of a right for which a claim was made. And in view of that provision, the government's position, if accepted, would lead to arbitrary results. For example, in the instant case if the insured had become totally and permanently disabled on June 18, 1919, and had lived beyond July 3, 1931, he could have brought suit any time prior to that date or, even beyond that date, within an extended period of time gained by reason of pendency of claim. But if the insured had lived and had filed his claim on July 4, 1931, any suit subsequently filed by the insured or his administrator, on such claim would have been barred. And if the insured had died prior to July 3, 1931, and his beneficiary had filed a suit on or before that date, the beneficiary could have recovered. But if the beneficiary had filed a claim on July 4, 1931, any suit based upon that claim would have been barred under the government's interpretation of "contingency upon which the claim is founded."

While the six year limitation for filing of a suit necessarily becomes restrictive in its effect upon claims, yet it undoubtedly was intended to relieve against hardships resulting from the fixing of the arbitrary date of July 3, 1931. This is clear from the provision of the act which allows a suit to be brought within six years after the right accrued or within one year after July 3, 1930, *whichever is the later date.* Evidently Congress was not actuated by a desire to cut off any meritorious claims,

even though they might be classed as "stale," since the act extended the time for suit on any claim to July 3, 1931, even though the contingency on which the claim was founded might have happened as far back as 1917.

When Congress provided for the change from yearly renewable term insurance to converted insurance the act provided, with certain exceptions, that "all yearly renewable term insurance shall cease on July 2, 1927, except when death or total permanent disability shall have occurred before July 2, 1927."[3] By force of the foregoing provision all rights to insurance benefits under yearly renewable term policies were kept alive in case of death or permanent disability prior to July 2, 1927, assuming of course that death or permanent and total disability had occurred during the life of the policy. The continuance of the insurance was not conditioned upon the insured's, or on the beneficiary's, having filed a claim prior to July 2, 1927, or within any limited period thereafter.

The foregoing as well as other legislative declarations, disclose a recognition by Congress that the government was bound by the yearly renewal contracts of insurance to pay a stated amount of insurance benefits in the form of 240 monthly installments, and indicate a clear intention on the part of Congress that this obligation be performed in all meritorious cases; and to give a construction to the phrase, "contingency upon which the claim was founded," which is inconsistent with the terms of the yearly renewal term policies, and which would result in cutting off meritorious claims, would conflict with the liberal purpose which runs throughout all the Congressional acts which relate to the enforcement of claims for insurance benefits under these policies.

We conclude that the District Court was in error in sustaining the government's motion to dismiss. The judgment is reversed with instructions to the District Court to overrule the motion to dismiss and for further proceedings not inconsistent with this opinion.

---

[3] 38 U.S.C.A. § 512.