**MILLER v. UNITED STATES.**
No. 7068.

Circuit Court of Appeals, Seventh Circuit.
July 17, 1940.

Eugene Bland, of Shelbyville, Ind., and Stephen A. Cross, of Chicago, Ill., for appellant.

Arthur Roe, U. S. Atty., of Vandalia, Ill., Carl W. Feickert, Asst. U. S. Atty., of East St. Louis, Ill., William M. Lytle, Atty., Department of Justice, of Chicago, Ill., Julius C. Martin, Wilbur Pickett, and Fendall Marbury, all of Washington, D. C., for appellee.

Before EVANS, TREANOR, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

This is an appeal by a veteran of the World War from a judgment denying him any recovery under the "automatic" war risk insurance provision of the U. S. statute (40 Stat. 409, Act of October 6, 1917, § 401, quoted infra) which automatically gave war risk insurance protection to any soldier who became totally and permanently disabled within 120 days from its enactment, October 6, 1917.

Plaintiff did not take out war risk insurance, but he was found by the trial court (jury waived), to have become permanently and totally disabled within the 120 day provision of the statute. His disabilities were goitre, heart trouble, etc., and he was discharged from service on a doctor's certificate stating that he was no longer physically fit for military duty. The Government has paid the veteran $19,000 in disability compensation payments up to the time of suit.

The trial court first entered judgment permitting recovery for a limited period and later, after a notice of appeal had been filed, entered a second judgment wherein recovery was denied, and the action dismissed.

Two questions confront us:

(1) Did the District Court have jurisdiction to vacate its final judgment for the plaintiff, *after a notice of an appeal therefrom had been taken,* and enter another final judgment for defendant?

(2) Is the July 3, 1930 amendment (46 Stat. 992), lengthening the period of the statute of limitations applicable to causes of action for claims like plaintiff's growing out of what is known as automatic insurance?

The facts: Plaintiff enlisted in July, 1917, and was discharged December 20, 1917. He filed a claim on June 10, 1931, upon which "notice of disagreement" was sent him, November 9, 1932. He began this action, November 14, 1932.

No question of total and permanent disability is here involved. The evidence is not even before us. The issue is whether the cause of action is governed by the 1928 or 1930 statute of limitations. Sec. 19, Act of June 7, 1924, 43 Stat. 612, amended by Act of May 29, 1928, § 1, 45 Stat. 964, as amended July 3, 1930, §

4, 46 Stat. 992, 38 U.S.C.A. § 445. Stated in another way, does the amendment of July 3, 1930, permitting suit within one year after date of amendment apply to automatic insurance?

The District Court first concluded, October 29, 1938, that a judgment should go to the veteran for monthly claims accruing within the six years preceding the filing of his claim, but not for the entire period from 1917. Defendant filed a notice of appeal from this judgment, on February 3, 1939; a stipulation as to contents of record was filed, as was a statement of points, on February 11, and on March 6, a motion and stipulation were filed in the District Court for an order extending the time to file the record in the Circuit Court of Appeals for a period of fifty days from March 15, which motion was granted.

On April 11 the Government petitioned for a rehearing in the District Court and filed a motion to vacate the findings and conclusions, on the ground that the Towery case (Towery v. United States, 7 Cir., 97 F.2d 906) relied on by the trial court in its memorandum, had been reversed by the Supreme Court. 306 U.S. 324, 59 S.Ct. 522, 83 L.Ed. 678. The trial court granted this motion over plaintiff's objections, which did not include any want of jurisdiction on the part of the District Court to vacate a judgment which was pending in this court on appeal.

On April 25 the court vacated the judgment in plaintiff's favor and entered one for the defendant. It dismissed plaintiff's action. In doing so it relied on the Towery decision, United States v. Towery, 306 U.S. 324, 59 S.Ct. 522, 83 L.Ed. 678.

On May 5, the trial court granted defendant's motion to dismiss its appeal from the first judgment pending in this court. On July 21, plaintiff filed his notice of appeal from the second judgment.

*Jurisdiction.* (a) The new Rules of Civil Procedure seem to stress the *filing of the notice of appeal* as the crux of "taking an appeal." Rule 73(a), 28 U. S.C.A. following section 723c. The rule specifically provides that "failure * * * to take *any of the further steps* to secure the review * * * does not affect the validity of the appeal, but is ground only for such remedies as are specified in this rule or, when no remedy is specified, for such action as the *appellate court* deems

appropriate, which may include *dismissal* of the appeal." Not even the clerk's failure to notify other parties of the filing of the notice of appeal affects its validity (Subsec. (b).

(b) The new Rules of Civil Procedure also emphasize the finality of judgments and specifically limit the time within which they may be changed by the trial court. Motions for new trial must be made within ten days (Rule 59(b) after the entry of the judgment, or in the case of newly discovered evidence, within the time in which an appeal may be taken. Clerical mistakes and errors arising from oversight or omission may be corrected in a judgment by the court at any time (Rule 60), and a trial court may relieve a party from a judgment entered through mistake, inadvertence, surprise, or excusable neglect, but such motion must be made within a reasonable time, not exceeding six months (Rule 60(b). Rule 52(b) provides for amendment, upon motion of a party made not later than *ten* days after entry of judgment, of findings and judgment.

▮▮▮ Our conclusions are: (a) The District Court has no authority to vacate a judgment by it entered in an action at law after an appeal from said judgment has been taken.* (b) The District Court has no authority to dismiss an appeal which has been taken from its judgment.

*Applicability of Statute of Limitations (Act of July 3, 1930) to "Automatic" Insurance.* While unnecessary to the disposition of this appeal, we will consider, in order to avoid future litigation, the effect of this statute on plaintiff's rights.

Automatic insurance was created by Sec. 401 of the War Risk Insurance Act, 40 Stats. page 409, enacted October 6, 1917. It provided:

"* * * Any person in the active service on or after the sixth day of April, nineteen hundred and seventeen, who, while in such service and before the expiration of one hundred and twenty days from and after such publication, becomes or has become totally and permanently disabled or dies, or has died, without having applied for insurance, shall be deemed to have applied for and to have been granted insurance, payable to such person during his life in monthly installments of $25 each."

An Act of 1917 (40 Stat. 410, § 405) provided for and authorized the bringing of suit against the United States upon veteran's insurance in case of a disagreement as to a veteran's claim.

This section was amended May 29, 1928, and a time limitation for the commencement of actions was attached. This section reads:

"No suit shall be allowed under this section unless the same shall have been brought within six years after the right accrued for which the claim is made, or within one year from the date of the approval of this amendatory Act, whichever is the later date * * *. No State or other statute of limitations shall be applicable to suits filed under this section."

This section was amended July 3, 1930 (46 Stat. 992) and this last amendment affords the basis of the contest before us. It reads:

"No suit on *yearly renewable term insurance* shall be allowed under this section unless the same shall have been brought within six years after the right accrued for which the claim is made or within one year after the date of approval of this amendatory Act, whichever is the later date, and no suit on United States Government life (*converted*) insurance shall be allowed under this section unless the same shall have been brought within six years after the right accrued for which the claim is made. * * *"

Precisely stated,—did this last amendment apply to "automatic" insurance?

▮▮▮ Our conclusion that it did not, is based on (a) three decisions of Courts of Appeal: United States v. Preece, 10 Cir., 85 F.2d 952; United States v. Pastell, 4 Cir., 91 F.2d 575, 112 A.L.R. 1125; United States v. Oliver, 6 Cir., 86 F.2d 1018. (b) The express provision of the amendment which makes it applicable to

---

* For cases decided before the New Rules of Civil Procedure became effective, on power of District Court to change a judgment after an appeal has been taken, see Bankers Indemnity Co. v. Pinkerton, 9 Cir., 89 F.2d 194; Simmons v. United States, 5 Cir., 89 F.2d 591; In re Bills of Exceptions, 6 Cir., 37 F.2d 849; Keyser v. Farr, 105 U.S. 265, 26 L.Ed. 1025; Hovey v. McDonald, 109 U.S. 150, 3 S.Ct. 136, 27 L.Ed. 888; Cyclopedia of Fed. Procedure, Longsdorf, Sec. 2859.

"yearly renewable term insurance" only. To include claimants, like plaintiff, within this amendment would necessitate our usurping legislative functions which we are not willing to do. (c) There were reasons for excluding automatic insurance from the provisions of the amendment extending the statute of limitations. They are to be found in the fact that claims for disability under automatic insurance were all over ten years old and therefore stale when this amendment was enacted. No such age or staleness existed as to yearly renewable term insurance.

The judgment of the District Court from which this appeal is taken (the second judgment) must be reversed. The order vacating the first judgment is of no efficacy. The appeal of defendant from the first judgment is still pending but it is not before us at this time. The District Court's order dismissing the appeal from the first judgment is of no force or effect.

The judgment of the District Court is reversed.

TREANOR, Circuit Judge (dissenting).

I believe that the language "yearly renewable term insurance" of the 1930 amendment of the World War Veterans' Act included the so-called "automatic insurance", which was authorized in 1917 by amendment of the War Risk Insurance Act.

By the terms of the original provision "Any person in the active service on or after the sixth day of April, nineteen hundred and seventeen, who, while in such service and before the expiration of one hundred and twenty days from and after such publication, becomes or has become totally and permanently disabled or dies, or has died, without having applied for insurance, shall be deemed to have applied for and to have been granted insurance, payable to such person during his life in monthly installments of $25 each." Act Oct. 6, 1917, § 401, 40 Stat. 409. No distinction is suggested between "automatic" insurance and insurance which had been duly applied for and granted. In either case Congress was carrying out the expressed intention of the Act to give to every enlisted man increased protection by granting "insurance against the death or total permanent disability" of enlisted men. Section 400. In the case of "automatic" in-surance the Government waived formal application and the payment of premiums prior to the happening of total and permanent disability or death, provided such disability or death occurred within 120 days of a designated event. The War Risk Insurance Act provided that "during the period of war * * * the insurance shall be term insurance for successive terms of one year each." Section 404. The foregoing language describes "yearly renewable term insurance" and includes all war time insurance. At no time during the war was war risk insurance designated as "yearly renewable term insurance."

There is no justification for considering the disability or death payments as gratuities as distinguished from payments of insurance benefits under insurance which had been granted upon formal application. As already indicated, the Government, as a special concession to those who might suffer total and permanent disability or death before the lapse of a reasonable time within which to apply for insurance, waived formal application and the obligation to pay the few dollars of premiums which would have accrued prior to the occurrence of permanent and total disability or death. But when the event happened which by terms of the Act of Congress created the insurer-insured relationship between the United States Government and the soldier, the insurance thus given legal existence was in all respects an obligation of the Government the same as its obligation under any other war risk insurance. In short, the one to whom "automatic insurance" was granted had, for all practical and legal purposes, a contract of insurance which was as binding upon the Government as the contract of insurance of the soldier who had applied for and had been formerly granted insurance. If he recovered from his total and permanent disability he would not be entitled to have payments continued and it is not reasonable to assume that Congress intended that in case of recovery from total and permanent disability the insurance would become void. His insurance would continue in force with the same rights and obligations as the insurance of any other soldier who had recovered from total and permanent disability.

The legislative history of the War Risk Insurance Act indicates that Congress in-

cluded all insurance within the term "war risk insurance" and recognized only one type of contract of insurance, namely, "term insurance for successive terms of one year each."

Congress reenacted in an amendment of 1921 (section 404, as amended, 42 Stat. 155) that "during the period of the war * * * the insurance shall be term insurance for successive terms of one year each"; and it was further provided that "where an insured whose yearly renewable term insurance has matured by reason of total permanent disability is found and declared to be no longer permanently and totally disabled, and where the insured is required under regulations to renew payment of premiums on said term insurance, and where this contingency is extended beyond the five-year period during which said yearly renewable term insurance otherwise must be converted, there shall be given such insured an additional period of two years from the date of which he is required to renew payment of premiums in which to convert said term insurance as hereinbefore provided."

I see no reason for assuming that one who, without formal application, had been granted insurance by reason of the happening of total and permanent disability, is excluded from the foregoing provisions. The language reveals no such intention. Here again is a clear indication by Congress that all insurance was war risk insurance of the type of term insurance, renewable yearly, *until such insurance should be converted in accordance with law*, or lapsed for failure to convert.

By amendment of May 29, 1928, a statutory limitation to actions on claims for insurance was provided. By the terms of the Act, as amended, claims were referred to as claims "under a contract of insurance between the bureau and any beneficiary or beneficiaries thereunder." Section 19, as amended, 43 Stat. 612. No reference is made to either converted insurance or yearly renewable term insurance. It would seem impossible to conclude from the language of the amendment that claims based upon "automatic insurance" were not included in the amendment. In July, 1930, Congress enacted the amendment which is directly involved in this suit and which provided that "No suit on yearly renewable term insurance shall be allowed under this section unless * * * and no suit on United States Government life (converted) in-

surance shall be allowed * * *." For the first time "yearly renewable term insurance" and "United States Government life (converted) insurance" were mentioned as such. As the time of the enactment of the amendment definite legislative provisions had been made, and supplemented by regulations of the bureau, for the conversion of original war risk insurance into converted insurance. The obvious purpose of the amendment was to place a time limit on actions for claims under the original war risk insurance as well as under the new insurance into which the old insurance was being converted. In short, for purposes of the statute, Congress treated all insurance now as falling into one of two classes, (1) yearly renewable term insurance, and (2) United States Government life (converted) insurance. I cannot agree that failure to refer specifically to the "automatic" insurance can be taken as an intention to exclude it from the terms of the amendment of July 3, 1930 in the face of the fact that Congress used language (yearly renewable term insurance) which was equivalent in sense to the language of the early War Risk Insurance Act which unquestionably did include the automatic insurance. In my opinion the language "no suit on yearly renewable term insurance" is used in the amendment to designate all suits on insurance claims other than suits for claims on converted insurance.