

2006 Decisions

**Opinions of the United States Court of Appeals for the Third Circuit**

7-11-2006

# Cap Funding VI LP v. Chase Manhattan USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4355

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

## Recommended Citation

"Cap Funding VI LP v. Chase Manhattan USA" (2006). *2006 Decisions.* Paper 762.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/762

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No: 04-4355


CAPITAL FUNDING, VI, LP,


Appellant


v.


CHASE MANHATTAN BANK USA, NATIONAL ASSOCIATION


Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Civ. No. 01- 6093)
District Judge: Hon. Legrome D. Davis


Submitted Pursuant to Third Circuit LAR 34.1(a)
February 2, 2006


Before: MCKEE, SMITH and VAN ANTWERPEN, Circuit Judges


(Opinion filed:    July 11, 2006)


**OPINION**


McKEE, Circuit Judge.

Capital Funding appeals several rulings the District Court made in granting

summary judgment to Chase Manhattan Bank.  For the reasons stated below, we will

affirm.


1

We will consider each of Capital Funding's claims of error separately. Because we write primarily for the parties, it is not necessary to reiterate the facts or background of this case except insofar as may be helpful to our brief discussion.

## I. MOTION TO COMPEL

Capital Funding purchased a portfolio of charged-off credit card accounts from Chase Manhattan Bank pursuant to a Credit Card Purchase Agreement. (J.A. 028.) Capital Funding subsequently sued Chase, contending that accounts in the portfolio were not as represented in the Agreement.

On appeal, Capital Funding challenges the District Court's order rejecting Capital Funding's January 15, 2004, motion to compel the production of five years of account histories for 150 sample accounts selected by the court. (Order, Feb. 3, 2004 at J.A. 117a.) We review the challenged discovery ruling for an abuse of discretion. *See Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 354 (3d Cir. 2003).

After a lengthy and bitter dispute as to the number and dates of account histories that would be provided, the District Court issued an order by which it selected 150[1] accounts at random and directed Chase to provide "billing statements for the selected accounts for the five previous years." (Order, July 22, 2003 at J.A. 083.) Chase interpreted the phrase to mean five years prior to the order, and accordingly provided Capital Funding with account histories dating to July 1998. Capital Funding, however,

---

[1] Capital Funding chose this number, agreeing in a conference call that 150 sample accounts would be "sufficient and acceptable." (Appellant's Br. 13.)

interpreted "the five previous years" to mean the five years prior to December 1999, the charge-off date in the purchase agreement.

Capital Funding wrote to the court on September 9, 2003, and again on September 17, 2003, asking for a confirmation of its interpretation of the order. (*See* Mot. for Reconsideration and Clarification 7, Oct. 3, 2003.) The proposed order attached to the second letter directed Chase to produce complete account histories for each of the 150 accounts.[2] In response, the District Court issued a scheduling order that did not mention the dates of account histories to be produced, and thus implicitly denied Capital Funding's requests. (Order, Sept. 23, 2003.) Capital Funding filed a Motion for Reconsideration and Clarification, asking the court to clarify the September order "to specifically reflect the five year period of time for which . . . histories must be produced by [Chase]." (Mot. for Reconsideration and Clarification 4.) The District Court denied the motion, stating that the September 22, 2003 order was "abundantly clear on its face and in no need of clarification" and noting that "[Capital Funding] merely appears to disagree with the Court's rulings, which alone is not a proper basis for granting Plaintiff's Motion." (Mem. Order. 2, Jan. 5, 2004.) Undeterred, Capital Funding filed a motion to compel the production of the 150 account histories going back to December 1994. (Mot. to Compel, Jan. 15, 2004 at 104a.) The court denied that motion. (J.A. 117a.)

---

[2] Capital Funding did not provide this document with the appendix and the electronically available docket entry Chase claims contains this document, *see* Appellee's Br. 53, actually contains an unrelated and likely incorrect attachment. Appellant does not dispute Chase's characterization of the order, however.

On appeal, Capital Funding argues that the account histories were necessary to show that Chase sold Capital Funding accounts that had experienced delinquencies other than the delinquency that lead to the charge-off. Chase, however, conceded that the accounts included such prior delinquencies, eliminating the need for discovery on this issue.

Capital Funding further argues that the histories were required to prove that accounts were charged off earlier than Chase represented in the Agreement. However, Capital Funding received histories for 150 accounts dating back to July 1998, 17 months prior to the charge-off date in the Agreement. These histories would have reflected any early charge-off, yet Capital Funding did not use them to show that Chase charged off accounts earlier than it represented.

The District Court thus evaluated and denied numerous motions Capital Funding had filed to obtain the same information it sought in the motion to compel. Not only did the District Court not abuse its discretion in denying the motion to compel, it showed commendable patience in continuing to field repetitive requests for the same documents despite numerous refusals to order additional account histories. We can find nothing in this record to suggest that the District Court's failure to grant a motion to compel, which the court clearly concluded was untimely, burdensome, and repetitive, could constitute an abuse of discretion under the circumstances here.

## II. MOTION TO DEPOSE

Capital Funding claims that the District Court abused its discretion in disallowing the deposition of TransUnion employee Sharon Sarna-Paulikaitis while allowing Chase to rely upon her affidavit. However, Chase argues (without contradiction from Capital Funding in the latter's Reply Brief) that Capital Funding is only telling part of the story. Capital Funding subpoenaed TransUnion on September 12, 2003, "the day discovery closed." (Appellee's Br. 56.) Capital Funding did nothing to enforce that subpoena when TransUnion objected. Thereafter, TransUnion provided Chase with an affidavit, "which Chase promptly provided to [Capital Funding]." (Appellee's Br. 56.) That affidavit stated, in pertinent part, that "TransUnion currently does not have a field representing a charge off date." (TransUnion Aff. ¶ 9 at J.A. 109.) TransUnion's credit reports are squarely implicated by Capital Funding's breach of contract suit and its allegations about the extent of the prior delinquencies and credit history of the accounts purchased from Chase. Capital Funding's expert on this issue, Louise Epstein, relied on the TransUnion reports to argue that the accounts had been charged-off prior to December 1999. Capital Funding does not deny that it "issued (and then abandoned)" (Appellee's Br. 57) a subpoena to TransUnion before discovery closed. Chase immediately disclosed the TransUnion affidavit to Capital Funding, and there is no suggestion of bad faith. Given that background, the argument that the District Court somehow abused its discretion in denying Capital Funding's belated motion to compel the deposition of a TransUnion representative is frivolous.

Capital Funding also attempts to challenge to the District Court's ruling on the

TransUnion affidavit under Fed. R. Civ. P. 26(a)(2)(b). Capital Funding raises this argument for the first time on appeal. As a "general rule," absent exceptional circumstances, we do not review issues raised for the first time on appeal. *See Gardiner v. Virgin Islands Water & Power Auth*., 145 F.3d 635, 646-47 (3d Cir. 1998). We can find no exceptional circumstances here, and we therefore need not address this claim.

Capital Funding argues that even if the affidavit is not deemed expert testimony, it is still inadmissible under Fed. R. Civ. P. 37(c)(1). That Rule prohibits using evidence at trial that has not been disclosed pursuant to Fed. R. Civ. P. 26, unless the failure to disclose is harmless. However, "the exclusion of critical evidence is an 'extreme' sanction, not normally . . . imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894 (3d Cir. 1977)). We see nothing here that would suggest that Chase's behavior rose to this level, and Capital Funding does not point us to anything that would. Similarly, Capital Funding cannot establish that it was prejudiced by the non-disclosure. Capital Funding was well aware of the possible importance of testimony from TransUnion and had ample opportunity to depose appropriate employees or officers of that company. In fact, as noted above, it served a timely subpoena for a deposition on TransUnion and then did nothing to follow up.

### III. EXCLUSION OF EXPERT TESTIMONY

Capital Funding appeals the exclusion of the testimony of its proposed experts, Louise Epstein and Glenn Newman. We also review that claim for an abuse of discretion. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 749. In its thorough and comprehensive opinion, the District Court explained why it was excluding this evidence, and we need only briefly address Capital Funding's claim that the District Court abused its discretion in doing so.

Capital Funding contends that it was improper for the District Court to evaluate the methods and information Newman relied on in forming his opinion. According to Capital Funding, any such concerns were only relevant to issues of credibility or probative weight and should therefore have been resolved by a jury. That argument ignores the District Court's "gatekeeping" obligation in evaluating expert testimony. *See Kumho Tire v. Carmichael*, 526 U.S. 137,141 (1999). The District Court possesses "the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id*. at 142 (emphasis in original). The District Court's concerns here amply support the exercise of its discretion in the performance of its gatekeeper function.

## IV. SUMMARY JUDGEMENT

### 1. *Eligibility of Accounts*

Capital Funding relied exclusively on unauthenticated TransUnion credit reports in attempting to show that accounts in the Portfolio were charged off prior to December

7

1999, in violation of the Agreement.  As the District Court explained in excluding the reports, Fed. R. Evid. 901(a) requires documents to be authenticated in order for them to be admissible at trial, and only evidence admissible at trial may be considered in ruling on a motion for summary judgement.  *See Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 n.1 (3d Cir. 1996).

Capital Funding argues that because Anthony Carabello could have authenticated the credit reports at trial, the District Court should have considered them.  However, Carabello's affidavit  was not offered with Capital Funding's Opposition for Summary Judgement.  Rather, it was only tendered with the Motion for Reconsideration.  Yet, it clearly was not "newly discovered evidence," and it was therefore properly excluded from consideration.  *See Harsco Corp. V. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Moreover, the District Court realized that Capital Funding failed to show that Carabello could authenticate the credit reports.  Finally, in its affidavit, TransUnion clearly states that it "does not currently have a field representing charge off date."  (J.A. 108-09.) Thus, as the District Court pointed out, "even if the credit reports had been admissible, they do not state what Capital Funding suggests."[3]  (J.A. 021.)

---

[3]Capital Funding further argues that because it was denied the additional account histories, it was deprived of the evidence it could have used to show an earlier charge-off date.  As noted above, Capital Funding received seventeen months of histories for 150 accounts, but did not use a single one of these histories.  Accordingly, we do not think the the District Court abused its discretion in concluding that additional histories would not have changed the outcome.

8

## 2. *Defining "Delinquency"*

Capital Funding defines "delinquency" under the Agreement as "any delinquency, whether it was the one that led to the charge-off or not." Chase defines it as "the delinquency that led to the charge-off." The term is not defined in the Agreement. Accordingly, "the rules of contract construction require that the term be given the meaning commonly understood in the credit card industry, as established by the record." *FleetBoston Fin. Corp. Fleet Nat'l Bank v. Advanta Corp.*, 2003 Del. Ch. LEXIS 8, * 71 (Del. Ch. 2003). *See also* Restatement (Second) of Contracts § 222. Here, Epstein, Capital Funding's own industry expert, explained in a deposition that the term "delinquency" refers to the delinquency that lead to charge-off. (J.A. 646-47.) Capital Funding offered no evidence that others in the industry use that term to refer to something other than the delinquency that lead to the charge off in this context. Moreover, Capital Funding did not challenge Chase's assertion that neither Chase nor any other bank in the industry sells portfolios of accounts with a history of only one delinquency.

## 3. *Damages*

The District Court was also correct in concluding that Capital Funding failed to present "evidence from which damages may be calculated to a reasonable certainty." *Ware v. Rodale Press, Inc*., 322 F.3d 218, 225-26 (3d Cir. 2003). In its motion opposing summary judgment, Capital Funding relied entirely on the affidavit of Glenn Newman. The District Court determined that his testimony was unreliable, and excluded it. On

9

appeal, Capital Funding relies on the Carabello affidavit that was submitted with its motion for reconsideration. However, as we have already noted, Carabello's testimony was not offered until after the District Court granted summary judgment and it was not considered. Ironically, Capital Funding had insisted that Carabello was *not* competent to testify about damages, and had objected to Chase questioning him about damages during his deposition. (J.A. 559.)

## V. CONCLUSION

For the reasons listed above, the District Court's grant of summary judgment against Capital Funding and in favor of Chase will be affirmed.